# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RESOURCE ASSOCIATES GRANT
WRITING & EVALUATION SERVICES,
INC., a New Mexico Corporation,

       Plaintiff,

vs.                                    No. CIV 15-1132 JB/SCY

SOUTHAMPTON UNION FREE
SCHOOL DISTRICT, a New York School
District,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant Southampton Union Free School District, a New York School District's Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer Venue, filed December 17, 2015 (Doc. 5)("MTD"). The Court held a hearing on March 8, 2016. The primary issues are: (i) whether the Court has personal jurisdiction over Defendant Southampton Union Free School District, a New York School District; and (ii) whether, if the Court concludes that it has personal jurisdiction over Southampton Union, it should order transfer of venue to the United States District Court for the Eastern District of New York. The Court will grant the MTD and will transfer this action to the Eastern District of New York pursuant to 28 U.S.C. § 1631. First, the Court concludes that it lacks personal jurisdiction over Southampton Union. The Court does not have general personal jurisdiction over Southampton Union, because Plaintiff Resource Associates Grant Writing & Evaluation Services, Inc. has not established that Southampton Union's contacts with New Mexico are so continuous and systematic that it is essentially at home in New Mexico. The Court also does not have specific

personal jurisdiction over Southampton Union, because it does not have sufficient minimum contacts with New Mexico to comport with the requirements of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States of America. Second, the Court will transfer this action to the Eastern District of New York pursuant to 28 U.S.C. § 1631.

## FACTUAL BACKGROUND

The plaintiff need make only a prima facie showing of personal jurisdiction to defeat a motion to dismiss under rule 12(b)(2) of the Federal Rules of Civil Procedure. See OMI Holdings, Inc. v. Royal Ins. Co. of Can., 149 F.3d 1086, 1090 (10th Cir. 1998). "A plaintiff may make this *prima facie* showing by demonstrating, by affidavit or other written materials, facts, that, if true, would support the exercise of personal jurisdiction over defendant." Rainy Day Books, Inc. v. Rainy Day Books & Café, LLC, 186 F. Supp. 2d 1158, 1160 (D. Kan. 2002)(Waxse, J.). In considering whether plaintiff has made a prima facie showing of personal jurisdiction over the defendant, the Court must take the complaint's allegations as true to the extent the defendant's affidavits do not controvert them. See Tompkins v. Executive Comm. of S. Baptist Convention, No. CIV 13-0840 JB/CG, 2015 WL 1569034, at *4 (D.N.M. Mar. 31, 2015)(Browning, J.). Moreover, "[w]hen conflicting affidavits are presented, factual disputes are resolved in plaintiff's favor. . . ." Behagen v. Amateur Basketball Ass'n of U.S.A., 744 F.3d 731, 733 (10th Cir. 1984). To decide the MTD, the Court takes its facts from: (i) the Complaint for Damages, filed December 14, 2015 (Doc. 1-2)("Complaint"); (ii) the Declaration of Debbie Oftedal (dated January 14, 2016), filed January 14, 2016 (Doc. 11-1)("Oftedal Decl."); (iii) the Email from Karenann Volinski to Debbie Oftedal (dated October 9, 2013), filed January 14, 2016 (Doc. 11-1 at 3)("Oct. 9th Email from Volinski to Oftedal"); (iv) the Email from Debbie

Oftedal to Karenann Volinski (dated October 8, 2013), filed January 14, 2016 (Doc. 11-1 at 4)("Oct. 8th Email from Oftedal to Volinski"); (v) the Declaration of John Nawrocki, filed January 14, 2016 (dated January 14, 2016)(Doc. 11-2)("Nawrocki Decl."); (vi) the Email from John Nawrocki to Debbie Oftedal (dated October 4, 2013), filed January 14, 2016 (Doc. 11-2 at 3)("Oct. 4th Email from Nawrocki to Oftedal"); (vii) the Email Chain Between Deb Montgomery, Scott Farina, Amanda Gutierrez, and John Nawrocki (dated September 26, 2013), filed February 4, 2016 (Doc. 18-1)("Feb. 4th Email Chain"); and (viii) the Resource Associates Website, filed February 4, 2016 (Doc. 18-2)("Resource Associates Website").

This case is about a reciprocal agreement (the "Reciprocal Agreement") into which Resource Associates and Southampton Union entered. See Complaint ¶ 3, at 1. Resource Associates is a New Mexico corporation doing business in the State of New Mexico, with an office in Farmington, New Mexico in San Juan County, which is the principal location of Resource Associates' day-to-day operations. See Complaint ¶ 1, at 1; Oftedal Decl. ¶ 2, at 1. "Resource Associates' business focuses on assisting nonprofit organizations, schools, businesses, government agencies and other entities with identifying and obtaining grants." Oftedal Decl. ¶ 3, at 1. Southampton Union is a New York school district. See Complaint ¶ 2, at 1.

On approximately September 26, 2013, Deb Montgomery of Resource Associates sent an email advertisement to Scott Farina at Southampton Union. See Feb. 4th Email Chain at 1-5. This email advertisement "listed Resource Associates' New Mexico telephone number (with a 505 area code) and contained a link to Resource Associates' website, which featured information about the company's New Mexico headquarters." Nawrocki Decl. ¶ 4, at 1. See Oct. 4th Email from Nawrocki to Oftedal at 2-3. See Resource Associates Website at 1-16. In or around

September, 2013, Karenann Volinski, Southampton Union's Coordinator of Data and Assessment, contacted Nawrocki in New Mexico to inquire about engaging Resource Associates' services in connection with the New York State Extended Learning Time grant ("Extended Day Grant").  Nawrocki Decl. ¶ 3, at 1.  Volinski indicated that Southampton Union had learned about Resource Associates through an email advertisement.  <u>See</u> Nawrocki Decl. ¶ 3, at 1.  After Volinski's initial email, Nawrocki and Volinski engaged in a series of telephone calls and emails about Resource Associates' services and Southampton Union's interest in retaining Resource Associates in connection with applying for the Extended Day Grant.  <u>See</u> Nawrocki Decl. ¶ 5, at 2.  During these conversations, Nawrocki discussed with Volinski that Resource Associates is located in New Mexico.  <u>See</u> Nawrocki Decl. ¶ 6, at 2.  The communications between Nawrocki and Volinski resulted in Southampton Union deciding to engage Resource Associates to provide services relating to the Extended Day Grant.  <u>See</u> Nawrocki Decl. ¶ 7, at 2.  On October 4, 2013, Volinski emailed Nawrocki in New Mexico to inform him that Southampton Union wished to proceed with the contract with Resource Associates.  <u>See</u> Nawrocki Decl. ¶ 7, at 2; Oct. 4th Email from Nawrocki to Oftedal at 1.

On approximately October 4, 2013, Nawrocki informed his colleague Debbie Oftedal that Southampton Union wished to enter into a contract with Resource Associates, under which Resource Associates would provide grant-writing services in connection with the Extended Day Grant.  <u>See</u> Oftedal Decl. ¶ 4, at 1; Oct. 4th Email from Nawrocki to Oftedal at 1.  On approximately October 8, 2013, Oftedal forwarded a proposed contract, entitled a Reciprocal Agreement, to Southampton Union.  <u>See</u> Oftedal Decl. ¶ 5, at 1; Oct. 8th Email from Oftedal to Volinski at 4.  Southampton Union returned an executed copy of the proposed contract to Oftedal

on October 9, 2013, using Oftedal's Resource Associates email address.  <u>See</u> Oftedal Decl. ¶ 5,

at 1; Oct. 9th Email from Volinski to Oftedal at 3.  In other words, on October 8, 2013, Resource

Associates and Southampton Union entered into the Reciprocal Agreement, under which

Resource Associates would assist Southampton Union in the development of the Extended Day

Grant proposal, which was due October 25, 2013.  <u>See</u> Complaint ¶ 3, at 1.  At the time Resource

Associates and Southampton Union entered into the Reciprocal Agreement, Resource

Associates' office was located in Farmington.  <u>See</u> Complaint ¶ 9, at 3; Oftedal Decl. ¶ 2, at 1.

The Reciprocal Agreement contains a section entitled "Other Terms, Jurisdiction and Attorney

Fees," which states:

> Client and Vendor acknowledge that the Provider has no control over the budget of the funder, and that on very rare occasion the funder's budget can be cut or withdrawn, so that a grant may not be funded.  In this rare case, the Client and Vendor understand that the Client acknowledges that they are not entitled to a refund of fees or additional free services, if applicable.  Client acknowledges that Client has fully read and completely understands this multi-page agreement. Client and Vendor acknowledge that the Provider must receive a signed and dated agreement in addition to compensation from the Vendor for its grant writing services prior to services being rendered.  All rights in data and intellectual property of all materials related to the grant proposal shall remain with the Provider.  If any provision of the agreement or the application thereof to any person or circumstance is held invalid such invalidity shall not affect any other provision which can be given effect without this invalid provision or application and to the end the provisions hereof shall be servable.  If Resource Associates, the Provider, or its selected evaluator or post awards services company is damaged by a violation of this Agreement, it may file a complaint and seek redress for injunctive relief, restitution, and damages.  Attorney's fees and litigation costs shall be awarded to Resource Associates or its selected evaluator and/or post award services company in this action if it is the prevailing party.  Client and Vendor hereby agree to the full conditions of this Agreement, and any subsequent changes to this Agreement must be made in writing and signed by all parties: Vendor, Client and Provider.

Reciprocal Agreement at 3.[1]

Following the parties' entry into the Reciprocal Agreement, Resource Associates proceeded to provide Southampton Union with the grant-writing and related services required under the Reciprocal Agreement.  See Oftedal Decl. ¶ 7, at 2.  "During the course of Resource Associates' provision of services, [Southampton Union] continued its contacts with the State of New Mexico, including by posting the final Extended Day Grant application to Resource Associates' website."  Oftedal Decl. ¶ 8, at 2.  "The website is maintained in Farmington, New Mexico."  Oftedal Decl. ¶ 8, at 2.  Resource Associates succeeded in its work on behalf of Southampton Union, in that in June, 2014, the State of New York Department of Education awarded an Extended Day Grant to Southampton Union in the amount of $2,572,402.00.  See Oftedal Decl. ¶ 9, at 2; Complaint ¶ 4, at 2.  On Tuesday, October 7, 2014, the Southampton Board of Education voted to reject the $2,572,402.00 state grant that would have extended the school year for elementary and intermediate students by 300 hours, most likely by expanding the typical school day.  See Complaint ¶ 5, at 2.  The Southampton Board rejected the grant because of concerns of having kids spend so much time in the classrooms and whether the schedule changes would be sustainable once the grant expires.  See Complaint ¶ 5, at 2.  In approximately March, 2015, Resource Associates learned that Southampton Union had declined the grant award.  See Oftedal Decl. ¶ 9, at 2.  On March 26, 2015, Resource Associates sent a letter to Southampton Union "demanding payment of $257,240.00 that was owed under the Reciprocal Agreement."  Complaint ¶ 10, at 3.

_____

[1]As the Court describes in its analysis, the Reciprocal Agreement does not contain a forum selection or choice-of-law provision.

## PROCEDURAL BACKGROUND

On November 5, 2015, Resource Associates filed suit in the Eleventh Judicial District Court, County of San Juan, New Mexico. <u>See</u> Complaint at 1. A little over a month later, on December 14, 2015, Southampton Union removed the case to federal court, asserting diversity jurisdiction. <u>See</u> Notice of Removal, filed December 14, 2015 (Doc. 1). Resources Associates asserts two causes of action against Southampton Union: (i) breach of contract, <u>see</u> Complaint ¶¶ 11-14, at 3-4 (Count 1); and (ii) quantum meruit, <u>see</u> Complaint ¶¶ 15-18, at 4 (Count 2). Resource Associates asks the Court for judgment against Southampton Union on both counts in the amount of $256,240.00 for its fee under the Reciprocal Agreement, plus statutory interest at the rate of fifteen percent per annum (which is $105.72 per day) from the date of judgment, until paid in full, court costs and attorney fees, and for such relief as the Court deems just and proper. <u>See</u> Complaint ¶¶ 14, 18, at 3-4. Relevant to the Court's analysis on the MTD, the Complaint states: "At the time the Reciprocal Agreement was entered into, Plaintiff's office was located in Farmington, San Juan County, New Mexico, as shown on Page 4 of the Reciprocal Agreement, thereby requiring any litigation over the Reciprocal Agreement to be brought in the District Court of San Juan County, New Mexico." Complaint ¶ 9, at 3.

### 1. The MTD.

Southampton Union filed the MTD on December 17, 2015. <u>See</u> MTD at 1. Southampton Union moves the Court to dismiss this action for lack of personal jurisdiction or, in the alternative, to transfer to the federal District of New York. <u>See</u> MTD at 1. Southampton Union first argues that the Court lacks personal jurisdiction over it. <u>See</u> MTD at 1-6. Southampton Union contends that the Supreme Court of New Mexico has explained that New Mexico's long-

arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." MTD at 4 (quoting Tercero v. Roman Catholic Diocese of Norwich, Connecticut, 2002-NMSC-018, ¶ 6, 48 P.3d 50, 54).

Southampton Union maintains that the Court applies a three-part test to determine whether it has personal jurisdiction over an out-of-state defendant: (i) whether the defendant committed an act or omission specifically set forth in the long-arm statute; (ii) whether the plaintiff's cause of action arose out of the alleged acts or omissions; and (iii) whether sufficient minimum contacts with New Mexico have been established to satisfy due-process concerns. See MTD at 4 (citing Fed. Deposit Ins. Corp. v. Hiatt, 1994-NMSC-044, 463, ¶ 7, 872 P.2d 879, 881). Southampton Union asserts that, here, Resource Associates alleges in Paragraph 9 of the Complaint that the "Plaintiff's office was located in Farmington, San Juan County, New Mexico, as shown on Page 4 of the Reciprocal Agreement" and "thereby requiring any litigation over the Reciprocal Agreement to be brought in the District Court of San Juan County, New Mexico." MTD at 5. Southampton Union argues that page 4 of the Reciprocal Agreement is not a choice-of-law provision and that the Reciprocal Agreement does not contain one. See MTD at 6. Southampton Union further asserts: "The mere fact that Petitioner summarily asserts jurisdiction in the Complaint does not confer jurisdiction on any basis, whether under the long-arm statute or by any evidence put forward by Plaintiff. Therefore, this case should be dismissed for lack of personal jurisdiction." MTD at 6.

Southampton Union next argues that, in the alternative, the Court should order transfer of these proceedings to the federal District Court in New York pursuant to 28 U.S.C. § 1404(a). Southampton Union maintains that venue statutes are designed to protect the defendant and the

witnesses against a plaintiff's choice of an unfair or inconvenient forum. See MTD at 6.

Southampton Union asserts that the Court has broad discretion in deciding such transfer

questions. See MTD at 7 (citing Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3rd Cir.

1973)). According to Southampton Union, the Court has two broad categories of factors to

consider in deciding whether to transfer venue: (i) the convenience of the parties and witnesses;

and (ii) the interests of justice. See MTD at 7 (citing 28 U.S.C. § 1404). Southampton Union

further explains:

> "Among the factors [a district court] should consider is the plaintiff's choice of
> forum; the accessibility of witnesses and other sources of proof, including the
> availability of compulsory process to insure attendance of witnesses; the cost of
> making the necessary proof; questions as to the enforceability of a judgment if
> one is obtained; relative advantages and obstacles to a fair trial; difficulties that
> may arise from congested dockets; the possibility of the existence of questions
> arising in the area of conflict of laws; the advantage of having a local court
> determine questions of local law; and, all other considerations of a practical
> nature that make a trial easy, expeditious and economical." *Navajo Health
> Foundation -- Sage Memorial Hosp., Inc. v. Burwell*, 86 F. Supp. 3d 1211 (*citing
> Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1516 (10th Cir.
> 1991).

MTD at 7. Southampton Union maintains that, in this case, the facts favor a transfer of this

action to a New York court:

> If the matter proceeds, the District will have a heavy burden to bring potential
> witnesses to New Mexico for trial, or to engage in the deposition process with
> witnesses who reside in New York, and have never entered the State of New
> Mexico. The witnesses and potential relevant evidence will be more accessible if
> the matter is litigated in New York. Also, regarding the applicable law, as stated,
> the Defendant is a New York School District and has potential governmental
> immunities in New York, which would be advantageous for a New York District
> Court to interpret questions of local law.

MTD at 7-8.

2.    **The Response**.

Resource Associates responded on January 14, 2016.    See Plaintiff's Response to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer Venue, filed January 14, 2016 (Doc. 11)("Response").    Resource Associates first argues that the Court has specific personal jurisdiction over Southampton Union in this case.    See Response at 7. Resource Associates maintains that Southampton Union has sufficient minimum contacts with New Mexico.    See Response at 7.    Resource Associates argues that Southampton Union purposefully directed activities at a New Mexico resident by: (i) voluntarily initiating and pursuing a business relationship with Resource Associates, which Southampton Union knew was a New Mexico company, through a series of telephone and email communications; and (ii) entering into the Reciprocal Agreement with Resource Associates, thereby undertaking continuing obligations entailing contact with New Mexico.    See Response at 7-8.    Resource Associates maintains that the parties' transaction "involved affirmative commitments by the School District to cooperate with, communicate with, and remit payment to a New Mexico company."    Response at 8.    According to Resource Associates, the transaction between Resource Associates and Southampton Union "involved the performance of sustained interactions and mutual duties taking place over an extended period of time."    Response at 8.    Resource Associates explains that Southampton Union entered into the Reciprocal Agreement in October, 2013, that the State of New York Department of Education awarded the grant in June, 2014, and that, if Southampton Union had accepted the award, the collaboration between Resource Associates and Southampton Union would have potentially continued during the grant's two-year duration.    See Response at 8.

Resource Associates quotes <u>Burger King Corporation v. Rudzewicz</u>, 471 U.S. 462 (1985), for the proposition that, in the context of "interstate contractual obligations," the Supreme Court of the United States has "emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." Response at 8-9 (quoting <u>Burger King Corporation v. Rudzewicz</u>, 471 U.S. at 473). Resource Associates also maintains that the significant monetary amount at issue -- a $2.5 million grant -- supports a finding that Southampton Union purposefully availed itself of New Mexico's protections when it voluntarily pursued the transaction with Resource Associates. <u>See</u> Response at 9 (citing <u>In-Flight Devices Corp. v. Von Dusen Air, Inc.</u>, 466 F.2d 220, 227 (6th Cir. 1972)). Resource Associates attacks Southampton Union's suggestion that the only possible basis for jurisdiction would be if the parties had included a forum selection clause in the Reciprocal Agreement. <u>See</u> Response at 9. Resource Associates maintains that, "[o]n the contrary, the parties' failure to include a forum selection clause within their Agreement -- either designating New Mexico or New York as the exclusive forum for resolving disputes -- means that personal jurisdiction should be determined by operation of law." Response at 9. In sum, Resource Associates contends that there is ample legal support for the Court to exercise personal jurisdiction over Southampton Union, including Southampton Union's initiation of contact with New Mexico. <u>See</u> Response at 9-10. Resource Associates also explains that the Court can consider the additional extrinsic evidence that it attached to its Response in considering the MTD. <u>See</u> Response at 10.

Resource Associates next argues that, because Southampton Union has sufficient minimum contacts with New Mexico, the Court must evaluate whether Southampton Union can "demonstrate . . . that exercising personal jurisdiction would nonetheless offend traditional notions of fair play and substantial justice." Response at 10 (quoting Newsome v. Gallacher, 722 F.3d 1257, 1271 (10th Cir. 2013)). Resource Associates further explains:

> Courts assessing the fairness of subjecting an out-of-state defendant to personal jurisdiction consider "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *TH Agric. & Nutrition*, 488 F.3d at 1292 (citation and quotation omitted).

Response at 11. Resource Associates argues that Southampton Union provides little analysis explaining why these factors weigh against the Court exercising personal jurisdiction in this case. See Response at 11.

First, Resource Associates quotes Dudnikov v. Chalk & Vermilion Fine Arts, 514 F.3d 1063 (10th Cir. 2008), for the proposition that "one side must bear the inconvenience of litigating 'on the road.'" Response at 11 (quoting Dudnikov v. Chalk & Vermilion Fine Arts, 514 F.3d at 1081). It contends that "[v]ague allusions to having an unquantified number of witnesses in New York are not sufficient to show that personal jurisdiction in New Mexico would be unreasonable" and maintains that contract disputes such as this one generally do not require a large number of third-party witnesses. Response at 11. Resource Associates contends that most witnesses are Southampton Union employees whose presence at trial can be arranged without compulsory process. See Response at 12. Resource Associates also dismisses Southampton Union's reference to "potential relevant evidence" in New York, contending that

the evidence is likely to consist mostly of documents and that, even if more documents are located in New York than in New Mexico, electronic discovery renders this fact relatively inconsequential.  <u>See</u> Response at 12.   Second, with respect to Southampton Union's indication that it would be unfair to subject it to personal jurisdiction in New Mexico because it enjoys immunities under New York state law, Resource Associates argues that: (i) Southampton Union does not cite the New York laws to which it is referring, making it impossible for Resource Associates to respond to this assertion; and (ii) Southampton Union has not identified any authority for its suggestion that sovereign immunity in one jurisdiction automatically translates into a lack of personal jurisdiction in another jurisdiction.   <u>See</u> Response at 12.   Resource Associates further asserts that it has been unable to substantiate Southampton Union's allegation that it would be immune from suit in New York courts.  <u>See</u> Response at 13.  Finally, Resource Associates argues that "the totality of factors weighs in favor of finding that it would be reasonable for this Court to exercise personal jurisdiction over the School District."  Response at 13.

Resource Associates next addresses Southampton Union's motion to transfer venue.  <u>See</u> Response at 13.  Resource Associates first notes that, although Southampton Union does not identify which federal district court of New York to which it seeks to transfer venue, it will assume that Southampton Union is asking the Court to transfer venue to the United States District Court for the Eastern District of New York, which covers Southampton Union's location in Long Island.  <u>See</u> Response at 14.  Resource Associates then argues that the Court should deny Southampton Union's request that the Court, in the alternative, transfer venue.  <u>See</u> Response at 14.  Resource Associates argues that Southampton Union does not dispute that

venue is proper in the United States District Court for the District of New Mexico, but, rather, asserts that venue would be more convenient in a district court in New York. <u>See</u> Response at 14. Resource Associates contends that Southampton Union bases its motion to transfer venue on 28 U.S.C. § 1404(a), which states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought . . . ." Response at 14-15. Resource Associates asserts that Southampton Union has not met its burden of establishing that this action should be moved from the District of New Mexico, where it chose to file suit. <u>See</u> Response at 15.

First, according to Resource Associates, the Court should not transfer venue, because there is a significant basis for honoring Resource Associates' choice of forum, given that a clear and logical connection exists between this action and the District of New Mexico, where Resource Associates is headquartered. <u>See</u> Response at 15-16. Second, Resource Associates contends that, although the location of witnesses and records is an important factor, Southampton Union has not: (i) identified the names of New York-based witnesses; (ii) described the materiality of the New York-based witnesses' testimony; and (iii) shown that compulsory process would be necessary for the New York-based witnesses. <u>See</u> Response at 15-17. It adds that there is no indication that there are more relevant records in New York than in New Mexico or that such records cannot be obtained electronically. <u>See</u> Response at 15-17. Third, Resource Associates argues that Southampton Union's "vague invocation of New York law -- devoid of any statutory or case law reference -- interferes with Resource Associates' ability to meaningfully address the School District's opinion." Response at 17-18. Resource Associates argues that it cannot assess the complexity or novelty of the New York law on which

Southampton Union relies without knowing the general statutory or common law basis for Southampton Union's position.  See Response at 18.  Resource Associates also rejects the implicit assumption that any prospect that Southampton Union would have sovereign immunity under New York law means that this action must be transferred there.  See Response at 18. Resource Associates contends that "[c]ourts should avoid granting motions to transfer venue 'predicated wholly on conjecture' that interpreting the law of a foreign jurisdiction could be complicated."  Response at 18 (quoting DiFederico v. Marriott Int'l, Inc., 714 F.3d 796, 808 (4th Cir. 2013)).  Resource Associates further explains:

> If and when the School District states a prima facie basis for asserting sovereign immunity (including by citing a statute or case law), this Court can decide whether sovereign immunity would apply in New York, whether New York's immunity laws differ from New Mexico's, and if so, whether application of New York's immunity laws would violate New Mexico's public policies.  *See, e.g., Sam*, 2006-NMSC-022 ¶¶ 16-18 (discussing [*Nevada v.*] *Hall*[, 440 U.S. 410 (1979)] and [*Franchise Tax Board of California v.*] *Hyatt*[, 538 U.S. 488 (2003)]). The School District has offered no rationale as to why this Court would be unable to perform such an analysis.

Response at 19.  Resource Associates stresses that Southampton Union must do more than establish that a New York forum is convenient.  See Response at 19.  According to Resource Associates, Southampton Union "must show that the Eastern District of New York is *more convenient* than the District of New Mexico."  Response at 19 (citing Von Dusen v. Barrack, 376 U.S. 612 (1964))(emphasis in original).  In sum, Resource Associates maintains that it has shown that Southampton Union has not met its burden of overcoming the presumption in favor of Resource Associates' choice of forum.  See Response at 20.  Accordingly, Resource Associates asks the Court to deny the MTD's request that the Court dismiss for lack of personal jurisdiction or, in the alternative, to transfer this action to a venue in New York.  See Response at 20.

3.    **The Reply.**

Southampton Union replied on February 4, 2016.  <u>See</u> Defendant Southampton Union Free School District, A New York School District's Reply to Plaintiff's Response to Motion to Dismiss for lack of Personal Jurisdiction or to Transfer Venue, filed February 4, 2016 (Doc. 18)("Reply").  Southampton Union first addresses Resource Associates' argument that the Court has personal jurisdiction over Southampton Union.  <u>See</u> Reply at 1-8.  Southampton contends that, under the laws of New York, it is unable to agree to jurisdiction in another court, that it never agreed to perform any acts in New Mexico, and that it never agreed that the Court has jurisdiction over it.  <u>See</u> Reply at 2.  Southampton Union maintains that there is no choice-of-law or forum selection clause in its contract with Resource Associates.  <u>See</u> Reply at 2.  According to Southampton Union, the only contacts between Resource Associates and Southampton Union were by telephone and email correspondence.  <u>See</u> Reply at 2.  Southampton Union argues that it has never conducted business in New Mexico and that no Southampton Union representative has ever visited New Mexico.  <u>See</u> Reply at 2.  It maintains that the parties met via email solicitation that Resource Associates initiated through an email advertisement.  <u>See</u> Reply at 2.  Southampton Union asserts that Resource Associates initiated this transaction by directly soliciting Southampton Union through its Superintendent.  <u>See</u> Reply at 2.  Southampton Union stresses that it responded to this direct solicitation for services to be provided in New York by Resource Associates, which maintains a national presence and transacts business across the United States.  <u>See</u> Reply at 2.

Southampton Union contends that the facts of this case are similar to <u>CABA Ltd. Liability v. Mustang Software, Inc.</u>, 1999-NMCA-089, 984 P.2d 803, in which the Supreme

Court of New Mexico concluded that it did not have jurisdiction over the out-of-state defendant where the parties' contacts included: (i) the defendant approached the plaintiff's representatives at a conference in California; (ii) the plaintiff presented no facts showing that the defendant directly or through an agent, solicited, advertised, or otherwise initiated the business transaction within New Mexico; (iii) the parties entered into a contract by mail, facsimile, and telephone; (iv) the plaintiff endorsed the letter of intent in New Mexico; and (v) although the plaintiff was to perform its contractual obligations in New Mexico, the defendant was to perform its contractual duties outside of the state. <u>See</u> Reply at 2-4. Southampton Union maintains that use of mail and telephone services to contact a New Mexico resident is insufficient to satisfy the "purposeful availment" prong of a minimum-contacts analysis. Reply at 5. Southampton Union contends that, even if there are sufficient minimum contacts, the Court must decide whether the exercise of personal jurisdiction over it would comport with "traditional notions of fair play and substantial justice." Reply at 5-6.

Southampton Union argues that Resource Associates solicited it for the services provided in this case, and that no Southampton Union representative has ever entered New Mexico or solicited services in New Mexico. <u>See</u> Reply at 6. Southampton Union maintains that the grant application in this case was to be provided to the New York State Education Department, located in New York, and that the work product was to transpire in New Mexico. <u>See</u> Reply at 6. Southampton Union insists that Resource Associates should reasonably anticipate being subjected to lawsuits in jurisdictions outside of New Mexico given that it is a multi-million dollar company, transacts business on a national level, and solicits new customers through direct email correspondence. <u>See</u> Reply at 6-7. Southampton Union stresses that, despite Resource

Associates soliciting and engaging in business on a national level, it has failed to include a New Mexico choice-of-law provision and that it should therefore anticipate being haled into court in jurisdictions outside of New Mexico.  See Reply at 7.  Southampton Union also asserts that it is subject to immunities under New York state law and is precluded from consenting to out-of-state jurisdiction.  See Reply at 8.  Southampton Union explains:

> By way of example, the District would have defenses under New York law.  As the Plaintiff skillfully points out, if the case were litigated in New York, pursuant to New York law, under NYS Education Law Section 3813, a notice of claim must be filed as a condition precedent to filing suit.  (*Averginos v. Palmyra-Macedon CSD,* 690 F.Supp.2d 115 (W.D.N.Y. 2008)).  These claims are deemed to accrue as of the date on which payment for the amount claimed was denied (§ 3813(1); *Zurich Am. Ins. Co. v. Ramapo CSD*, 63 A.D.3d 729 (2dDep't 2009)).  It is not sufficient to file the notice of claim with an employee (*see Kingsley Arms, Inc. v. Copake Taconic Hills CSD*, 9 A.D.3d696 (3d Dep't 2004)), even the superintendent of schools (*Newman v. LeRoy CSD*, 2008 U.S. Dist. LEXIS 28581 (W.D.N.Y. Apr. 8, 2008)).  Unverified e-mails and letters to staff regarding a plaintiff's complaint do not satisfy the statutory notice requirements either. (*Gastman v. Dep't of Educ. of City of N.Y.*, 60 A.D.3d 444 (1st Dep't 2009)).  The notice of claim in this type of lawsuit must be filed within three months after the accrual of the claim (§ 3813(1); *Carlson v. Geneva City Sch. Dist.*, 679 F.Supp.2d 355 (W.D.N.Y. 2010)).  In the instant case under New York law, the District could assert a defense such as this.

Reply at 8.

Southampton Union next turns to its request that the Court transfer venue.  See Reply at 8.  Southampton Union asks the Court to transfer these proceedings to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a).  See Reply at 8.  Southampton Union reiterates its arguments from the MTD, contending that all of the factors favor transfer of this matter to the Eastern District of New York.  See Reply at 9-10.  Southampton Union explains:

> If the matter proceeds, the District will have a heavy burden to bring its own witnesses from New York to New Mexico for deposition and trial. Also, in order to defend this matter, the Defendant has identified it will need witnesses from the New York State Education Department to discuss the New York State Extended

Learning Program. It will be burdensome to compel attendance and fund attendance, and potentially impossible to compel live testimony at trial, as compared to a national corporation who already anticipated going to New York. Defendant's trial will be severely diminished in New Mexico without the live witness testimony. It is these witnesses who will be needed for trial, and they will be unavailable if the case is tried in the District of New Mexico. Additionally, there was another party to the contract who was not located in New Mexico, and the parties would have to decide how to compel that party's presence. Also, regarding the applicable law, there will most certainly be conflict of law issues. As stated, the Defendant is a New York School District and has potential governmental defense in New York regarding notice on a contract claim and a potential defense that this contract was not correctly procured under New York law, which would be advantageous for a New York District Court to interpret questions of local law. Finally, the Plaintiff is an entity most accustomed to dealing in multiple jurisdictions, would need fewer witnesses to travel, and has the economic resources to do so.

Reply at 10.

### 4.     The Hearing.

The Court held a hearing on the MTD on March 8, 2016. <u>See</u> Transcript of Hearing (taken March 8, 2016)("Tr.").[2] The parties stuck to their arguments from the briefing. Southampton Union emphasized that the Reciprocal Agreement does not contain a forum selection clause and that the reference to any litigation being brought in the district court of San Juan County, New Mexico, comes from the Complaint and not the Reciprocal Agreement. <u>See</u> Tr. at 3:5-4:18 (Court, Gabaldon). Southampton Union maintained that it does not believe that there is general jurisdiction or specific jurisdiction. <u>See</u> Tr. at 6:4-10 (Gabaldon). Southampton Union attacked Resource Associates' reliance on <u>Burger King Corporation v. Rudzewicz</u>, contending that there, the Supreme Court articulated that an individual contract with an out-of-state party cannot alone established sufficient minimum contacts. <u>See</u> Tr. at 6:14-19 (Gabaldon). Southampton Union

---

[2]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final version may contain slightly different page and/or line numbers.

asserted that the Court must consider prior negotiations and contemplated future consequences, as well as the parties' actual course of dealing. See Tr. at 6:19-22 (Gabaldon). According to Southampton Union, this case is unlike Burger King Corporation v. Rudzewicz, which involved a very sophisticated client entering into a twenty-year contract which contained a forum selection clause. See Tr. at 6:24-7:11 (Gabaldon). Southampton Union emphasized that a number of witnesses and evidence are located in New York, but the Court countered that convenience is not a factor with respect to personal jurisdiction. See Tr. at 8:1-25 (Court, Gabaldon). On the motion to transfer, Southampton Union reiterated its arguments from the briefing and emphasized that it would likely have a contractual defense such as impossibility of performance. See Tr. at 11:14-24 (Court, Gabaldon).

Resource Associates conceded that it is not contending that the Court has general jurisdiction over Southampton Union. See Tr. at 12:4-10 (Muehlenweg). Rather, Resource Associates maintained that the Court has specific jurisdiction, in light of the factual allegations set forth in the Complaint and in the affidavits that Resource Associates submitted with its Response. See Tr. at 12:10-16 (Muehlenweg). Resource Associates admitted that it sent out a blanket email directed at Southampton Union as well as other school districts -- similar to a targeted website -- as an initial communication, but argued that the "initial . . . specific communication with respect to this work was initiated by the school district." Tr. at 12:21-13:8 (Muehlenweg). Resource Associates maintained that, if the grant was awarded, there was going to be a series of ongoing communications back and forth between Southampton Union and Resource Associates, and not a single email or telephone call. See Tr. at 13:24-24:8 (Muehlenweg). Resource Associates contended that this case differs from the Court's decision

in Diener v. Trapeze Asset Management, Inc., No. CIV 15-0566 JB/LAM, 2015 WL 8332933 (D.N.M. Nov. 30, 2015)(Browning, J.), in a number of respects, including: (i) in this case, the grant writing work was actually done in New Mexico, while in Diener v. Trapeze Asset Management, Inc., the asset management and investment work was performed in Canada; and (ii) in this case, Southampton Union initiated the specific contact that led to the Reciprocal Agreement -- albeit in response to an email mailing -- while in Diener v. Trapeze Asset Management, the customer in New Mexico initiated contact with Trapeze Asset Management. See Tr. at 14:9-15-4 (Muehlenweg). Resource Associates maintained that there are sufficient minimum contacts based on the telephone calls, the solicitation, and the ongoing contemplated relationship. See Tr. at 15:5-9 (Muehlenweg). It also insisted that, under the relevant caselaw, someone from Southampton Union need not have visited New Mexico for the Court to have personal jurisdiction over Southampton Union. See Tr. at 15:9-13 (Muehlenweg). With respect to Southampton Union's request, in the alternative, that the Court transfer this action to a federal court in New York, Resource Associates re-asserted its arguments from the briefing, and contended that it is a heavy burden on Southampton Union here to argue that New York would be a better and more convenient forum for this case. See Tr. at 18:24-19:2 (Muehlenweg).

The Court then stated that it was not inclined to make an immediate ruling. The parties had the following exchange:

> THE COURT: Well, I don't have a real inclination on this. I need to look at with I've done in the past. Mr. Muehlenweg, and y'all have cited some of the cases either here in oral argument and I need to go back [and look at] what I've done. Maybe that Trapeze case is the closest that I've done, but I want to give this a little bit of thought. So I'm not prepared to make a ruling today. . . . I need to give a little bit of thought to your motion to dismiss. Do you want to go ahead and have the scheduling, you're probably it sounds to me like you're going to need to do discovery somewhere and I could go ahead and give you dates and put

you on a track here with the understanding that if I grant the defendant's motion . . . we'll have to either dismiss the case or transfer it up to I think it will be the [E]astern [D]istrict? What [are] your thoughts? Do you want to go ahead and have an ISC and get some dates in place or do you want me to leave the initial scheduling order or scheduling conference until I issue the opinion. What's your thoughts, Mr. Muehlenweg?

MR. MUEHLENWEG: Your Honor, I think maybe [we're] all here it might be efficient to get this moving along [with] discovery, even if this case were to be moved[, it] is still going to be the same discovery . . .

THE COURT: What [are] your thoughts Mr. Gabaldon.

MR. GABALDON: Your Honor I concur, I spoke with counsel . . . and discussed a motion to stay discovery, but then read the court[']s past rulings, and th[e] fact exists that if discovery is going to go on somewhere, then I believe the Court has generally denied that motion to stay. So I would be okay with going forward at this point.

THE COURT: Go ahead and setting them appeared and I'll try to get the opinion out to you as soon as possible. Realistically this is March 8 it probably going to be after the first of the month. I've got a trial coming up and some things that are going to keep me hopping over the next 22 days. So it will probably be the first of April but I'll try to get an opinion out to you as soon as possible. All right, I have reviewed your joint status report and provisional discovery plan, if everybody wants me to go ahead and set some dates while we're together.

Tr. at 20:11-21:10 (Court, Gabaldon, Muehlenweg).

## STANDARD FOR DETERMINING RULE 12(b)(2) MOTIONS

Motions to dismiss under rule 12(b)(2) test the plaintiff's theory of personal jurisdiction as well as the facts supporting personal jurisdiction. See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 153-54 (2d Cir. 1999). Rule 12(b)(2) concerns lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). In determining personal jurisdiction, a court must test not only the complaint's jurisdictional theory, but also the facts on which jurisdiction is predicated. See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d at 154 (holding that the court "must determine whether the defendant in fact subjected itself to the court's jurisdiction").

Where a defendant raises a timely challenge contesting personal jurisdiction, the plaintiff bears the burden of establishing that there is personal jurisdiction over the defendant and that the exercise of personal jurisdiction would not violate due-process requirements.  See Overton v. United States, 925 F.2d 1282, 1283 (10th Cir. 1991); Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988); Jemez Agency, Inc. v. CIGNA Corp., 866 F. Supp. 1340, 1342 (D.N.M. 1994)(Burciaga, J).  At this stage of the proceedings, it is not for the court to resolve disputed facts.  See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 45 (1st Cir. 2002).  Rather, the court "'must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing.'"  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d at 45 (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).

## LAW REGARDING PERSONAL JURISDICTION

The plaintiff has the burden of proving personal jurisdiction.  The court's jurisdiction may rest on general or specific personal jurisdiction.  Due process, however, limits any state statutory basis for personal jurisdiction.

1.     **Burden of Proof.**

"[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists."  Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

> When jurisdiction is "decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing" of facts that would support the assertion of jurisdiction.  [Wenz v. Memery Crystal, 55 F.3d at 1505]. "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavit."  Behagen v. Amateur Basketball Ass'n, 744 F.2d at 733.  When, however, a defendant presents credible evidence through affidavits or other materials suggesting the lack of personal jurisdiction, the plaintiff must come forward with sufficient evidence to create a genuine

> dispute of material fact on the issue. See <u>Doe v. Nat'l Med. Servs.</u>, 974 F.2d 143,
> 145 (10th Cir. 1992). Only if the plaintiff meets the obligation of contesting the
> credible evidence that the defendant presents does the court resolve the factual
> disputes in favor of the plaintiff. See <u>Wenz v. Memery Crystal</u>, 55 F.3d at 1505;
> <u>Behagen v. Amateur Basketball</u> <u>Ass'n</u>, 744 F.2d at 733.

<u>Clark v. Meijer, Inc.</u>, 376 F.Supp.2d 1077, 1082 (D.N.M. 2004)(Browning, J.). When, however, "personal jurisdiction is assessed in an evidentiary hearing . . . , the plaintiff generally must establish, by a preponderance of the evidence, that personal jurisdiction exists." <u>Dudnikov v. Chalk & Vermilion Fine Arts, Inc.</u>, 514 F.3d at 1070 n.4. "The party seeking to establish personal jurisdiction over a foreign litigant must make two showings: first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment." <u>Marcus Food Co. v. DiPanfilo</u>, No. CIV 10-3285, 2011 WL 5084997, at *3 (10th Cir. Oct. 27, 2011). New Mexico's long-arm "statute extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." <u>Tercero v. Roman Catholic Diocese of Norwich, Conn.</u>, 2002-NMSC-018, ¶ 6, 48 P.3d 50, 54. Consequently, the Court "need not conduct a statutory analysis apart from the due process analysis." <u>Marcus Food Co. v. DiPanfilo</u>, 2011 WL 5084997, at *3 (internal quotation marks omitted).

### 2. **General and Specific Jurisdiction.**

Depending on the character and extent of a defendant's contacts, a court may exercise general or specific personal jurisdiction. See <u>Helicopteros Nacionales de Columbia, S.A. v. Hall</u>, 466 U.S. 408, 414 (1984).

> General jurisdiction is based on an out-of-state defendant's "continuous and
> systematic" contacts with the forum state, and does not require that the claim be
> related to those contacts. Specific jurisdiction, on the other hand, is premised on
> something of a <u>quid pro quo</u>: in exchange for "benefitting" from some purposive

conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts.

Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1078 (emphasis in original). Thus, "[s]uch contacts may give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum-related activities." Shrader v. Biddinger, 633 F.3d 1235, 1239 (10th Cir. 2011).

A court may assert specific jurisdiction "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. at 472 (citations omitted)(internal quotation marks omitted). In the tort context, a defendant has "purposefully directed" his activities at New Mexico or its residents when he or she has: (i) taken intentional action; (ii) the action was "expressly aimed" at New Mexico; and (iii) the action was taken with the knowledge that "the brunt of th[e] injury" would be felt in New Mexico. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1072 (quoting Calder v. Jones, 465 U.S. 783, 789-90 (1984)).

Cases involving the internet amplify these general personal jurisdiction principles. In these cases, the United States Court of Appeals for the Tenth Circuit focuses whether the website or internet user "*intentionally direct[ed]* his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." Shrader v. Biddinger, 633 F.3d 1235, 1240 (10th Cir. 2011)(emphasis in original). Simply posting defamatory statements on a website will not, standing alone, establish personal jurisdiction over the poster in any state where the post may be read. See Shrader v. Biddinger, 633 F.3d at 1241. Instead, courts consider whether the "defendant deliberately directed its message at an audience in the forum state and intended harm

to the plaintiff occurring primarily or particularly in the forum state." Shrader v. Biddinger, 633 F.3d at 1241. In short, "*the forum state itself must be the focal point of the tort*." Shrader v. Biddinger, 633 F.3d at 1244 (emphasis in original)(quoting Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1074 n.9)(internal quotation marks omitted).

### 3. Due Process and Personal Jurisdiction.

The due process analysis is also two-fold: First, [the defendant] must have "minimum contacts" with the forum state, demonstrating that he "purposefully availed" himself of the protections or benefits of the state's laws and "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. at 473-76; see also Emp'rs Mut. Cas. Co., 618 F.3d at 1159-60 (reiterating the Burger King standard). Although agreements alone are likely to be insufficient to establish minimum contacts, "'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.'" TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd., 488 F.3d 1282, 1287-88 (10th Cir. 2007)(quoting Burger King, 471 U.S. at 473, 478 . . . .Marcus Food Co. v. DiPanfilo, 2011 WL 5084997, at *4).

> A defendant may reasonably anticipate being subject to suit in the forum state "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 . . . (1985)(internal citation omitted); see also Hanson v. Denckla, 357 U.S. 235, 253 . . . (1958)("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State.").

TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd., 488 F.3d at 1287-88. The Supreme Court has held that the mere foreseeability of harm occurring in a particular forum will not support a finding of minimum contacts. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286,

295 (1980)(holding that, although "an automobile is mobile by its very design and purpose," thus indicating that it is foreseeable that a particular automobile may cause injury in a forum state, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause").  In Roberts v. Piper Aircraft Corp., 1983-NMCA-110, 670 P.2d 974, the Court of Appeals of New Mexico similarly rejected the argument that foreseeability could establish minimum contacts, and found no personal jurisdiction or minimum contacts in the following circumstances:

> [T]he record is devoid of any contact between Scenic Aviation and New Mexico. Scenic Aviation is a fixed-base operator selling aviation fuel in Las Vegas, Nevada.  There is no evidence that Scenic Aviation advertises in New Mexico, or sells fuel to New Mexico residents.  Without "contacts, ties, or relations" with New Mexico the fact that fuel sold by Scenic Aviation found its way into our state does not support a valid exercise of personal jurisdiction.

1983-NMCA-110, ¶ 19, 670 P. 2d at 978.  "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State.  Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297.  As the Tenth Circuit has further explained, because "mere foreseeability" is not sufficient to establish minimum contacts, a plaintiff "must establish . . . not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook intentional actions that were expressly aimed at that forum state."  Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1077.

Similarly, to find general jurisdiction over a defendant, contacts must be "continuous and systematic"; therefore, "[s]imply because a defendant has a contractual relationship and business dealings with a person or entity in the forum state does not subject him to general jurisdiction

there"; "correspondence with a forum resident does not support general jurisdiction;" and "sporadic or isolated visits to the forum state will not subject the defendant to general jurisdiction," because a "[defendant's] lack of a regular place of business in [the forum state] is significant, and is not overcome by a few visits." Shrader v. Biddinger, 633 F.3d at 1247.

"[G]eneral jurisdiction over a web site that has no intrinsic connection with a forum state requires commercial activity carried on with forum residents in such a sustained manner that it is tantamount to actual physical presence within the state." Shrader v. Biddinger, 633 F.3d at 1246.

When analyzing minimum contacts sufficient for general jurisdiction in regard to the operation of a web site, the Tenth Circuit has referred to, without adopting, a "sliding scale" framework. Shrader v. Biddinger, 633 F.3d at 1242 n.5.

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Shrader v. Biddinger, 633 F.3d 1242 n.5 (internal quotation marks omitted).

> If [the defendant] is found to have the requisite minimum contacts with [the forum state], then we proceed to the second step in the due process analysis: ensuring that the exercise of jurisdiction over him "does not offend 'traditional notions of fair play and substantial justice.'" See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 . . . (1980)(quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 . . . (1945)). [The defendant] bears the burden at this stage to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." See Dudnikov v. Chalk & Vermilion Fine

<u>Arts, Inc.</u>, 514 F.3d 1063, 1080 (10th Cir. 2008).  We consider the following five factors, . . . in deciding whether the exercise of jurisdiction would be fair:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies.

> <u>Id.</u> (brackets omitted); <u>see</u> <u>also</u> <u>OMI Holdings, Inc.</u>, 149 F.3d at 1095 (applying these factors in a case involving a Canadian corporation).  "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction."  <u>TH Agric. & Nutrition, LLC</u>, 488 F.3d at 1292 (internal quotation marks and brackets omitted).

<u>Marcus Food Co. v. DiPanfilo</u>, 2011 WL 5084997, at *4-5.

In <u>Silver v. Brown</u>, 678 F. Supp. 2d 1187 (D.N.M. 2009)(Browning, J.), <u>aff'd in part and rev'd in part</u>, 382 F. App'x 723 (10th Cir. 2010), the Court considered whether it had personal jurisdiction over defendants who allegedly slandered, defamed, and caused the plaintiff -- Michael Silver -- duress, by posting a blog on the internet that portrayed him in a negative light.  <u>See</u> 678 F. Supp. 2d at 1204.  The Court determined that it did not have personal jurisdiction over defendant Jack McMullen, because Silver failed to demonstrate that McMullen "was significantly associated with the blog or controlled it in any way."  678 F. Supp. 2d at 727.  The Court also concluded that it did not have personal jurisdiction over the blog post's author -- Matthew Brown -- because he was not domiciled in New Mexico, had not traveled to New Mexico, and did not transact business there.  <u>See</u> 678 F. Supp. 2d at 1211.  The Court said that Brown's blog posts similarly did not establish personal jurisdiction, because

> the blog is closer to an informative website than a commercial website.  No services are offered, and Brown is not collecting revenue from the website. Brown does not interact with the people who post information on the blog.

> Brown, to the Court's knowledge, did not solicit negative postings on the website. Further, even though people in New Mexico can view the website, the blog is not a website that is directed solely at the people of New Mexico. The number of people who can access the website in New Mexico in comparison to those who are able to access the website throughout the world, or even in the United States, according to the statistics that Silver provided at the hearing, is nominal.

678 F. Supp. 2d at 1211-12.

On appeal, the Tenth Circuit affirmed the Court's holding as to McMullen, but reversed its decision as to Brown. See Silver v. Brown, 382 F. App'x at 727-32. In an opinion that the Honorable Monrow G. McKay, United States Circuit Judge for the Tenth Circuit, authored, and Judges Broby and Ebel joined, the Tenth Circuit applied the three-part test from Calder v. Jones to conclude that the Court had personal jurisdiction over Brown. See Silver v. Brown, 382 F. App'x at 727-32.

Judge McKay first explained that the posting of the blog was "clearly an intentional act" designed to damage the plaintiff's reputation. 382 F. App'x at 729. Second, Judge McKay said that Brown had "expressly aimed his blog at New Mexico[,]" where Silver, his business, and the majority of his customers were located. 382 F. App'x at 729. Judge McKay said: "It was about a New Mexico resident and a New Mexico company. The blog complained of Mr. Silver's and [his business'] actions in the failed business deal. Those actions occurred mainly in New Mexico." 382 F. App'x at 729-30. Third, Judge McKay explained that Brown knew Silver would suffer the brunt of his injury in New Mexico, as the state was "unquestionably the center of his business activities." 382 F. App'x at 730.

### 4.    New Mexico's Long-Arm Statute.

New Mexico's long-arm statute provides, in relevant part, that its courts may exercise personal jurisdiction over a party "whether or not a citizen or resident of this state . . . as to any

cause of action arising from: (1) the transaction of business within this state . . . [or] (3) the commission of a tortious act within this state . . . ." N.M.S.A. § 38-1-16. For New Mexico courts

> to exercise personal jurisdiction over nonresident, out-of-state defendants, the following three-part test must be satisfied:
>
>> (1) the defendant's act must be one of the five enumerated in the long-arm statute; (2) the plaintiff's cause of action must arise from the act; and (3) minimum contacts sufficient to satisfy due process must be established by the defendant's act.
>
> State Farm Mut. Ins. Co. v. Conyers, 109 N.M. 243, 244, 784 P.2d 986, 987 (1989)(citing Salas v. Homestake Enterprises, Inc., 106 N.M. 344, 345, 742 P.2d 1049, 1050 (1987)). The first and third step of this test have been "repeatedly equated" with the due process standard of "minimum contacts."

F.D.K. v. Hiatt, 1994-NMSC-044, ¶ 7, 872 P.2d 879, 881. "When negligent acts occur outside New Mexico which cause injury within the state, a 'tortious act' has been committed for purposes of the long-arm statute." Tercero v. Roman Catholic Diocese of Norwich, Conn., 2002-NMSC-018, ¶ 20, 48 P.3d at 57. "As with the transaction of business analysis, rather than engage in a technical analysis of whether the defendant committed a tortious act, we must equate the 'tortious act' which the defendant is alleged to have committed with minimum contacts to determine if due process has been satisfied." Tercero v. Roman Catholic Diocese of Norwich, Conn., 2002-NMSC-018, ¶ 20, 48 P.3d at 57 (alteration omitted)(internal quotation marks omitted).

**5.      The Court's Recent Cases.**

The Court recently decided cases dealing with general and specific jurisdiction. In Fabara v. GoFit, LLC, 308 F.R.D. 380 (D.N.M. 2015)(Browning, J.), a plaintiff injured by an allegedly defective exercise ball in New Mexico brought suit against the manufacturer, which

was incorporated and headquartered in Oklahoma.  See 308 F.R.D. at 408.  The manufacturer moved to dismiss the complaint under rule 12(b)(2), arguing that the plaintiff lacked general jurisdiction because its contacts with New Mexico were neither continuous nor systematic.  See 308 F.R.D. at 384.  The plaintiff responded with photographs of the manufacturers' products in several stores, arguing that the manufacturer delivered the exercise balls into the stream of commerce with the expectation that New Mexico customers would purchase and use them.  See 308 F.R.D. at 389.  The Court rejected this theory, explaining that the manufacturer's contacts with New Mexico were not "so systematic and continuous as to make it essentially at home here."  308 F.R.D. at 397.  The Court noted that the manufacturer had almost no physical connections with New Mexico, and that its internet sales of roughly $20,000.00 over nine years were insufficiently "substantial" to support general jurisdiction. 308 F.R.D. at 402.

In Diener v. Trapeze Asset Management, Inc., the Court considered whether it had specific jurisdiction over a Canadian asset management firm that maintained a passive website, placed its name in a third party's money-manager listing, mailed marketing materials to New Mexico, had telephone conversations with plaintiffs located in New Mexico, and ultimately entered into a contract with plaintiffs located in New Mexico.  See 2015 WL 8332933, at *1. The Court concluded that it did not have specific jurisdiction for four primary reasons.  See 2015 WL 8332933, at *1.  First, the website was wholly passive and did not allow visitors "the opportunity to invest or interact with the site."  2015 WL 8332933, at *15.  Second, the third-party listing was similarly passive.  See 2015 WL 8332933, at *15.  Third, the Court noted that "phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts," noting that the alleged torts occurred in Canada.  2015 WL 8332933, at *17 (quoting

Benton v. Cameco Corp., 375 F.3d 1070, 1077 (10th Cir. 2004)).  Fourth, the plaintiffs reached out to the defendants to create the contractual relationship, distinguishing the case from cases finding purposeful availment.  See 2015 WL 8332933, at *17 (citing Burger King Corp. v. Rudzewicz, 471 U.S. at 473).

## LAW REGARDING VENUE

"Venue is defined as the appropriate district court in which to file an action."  Whiting v. Hogan, 855 F. Supp. 2d 1266, 1282 (D.N.M. 2012)(Browning, J.)(citing NLRB v. Line, 50 F.3d 311, 314 (5th Cir. 1995)).  The purpose of venue is to assure that lawsuits are filed in appropriately convenient courts for the matters raised and for the parties involved in the action. See Leroy v. Great W. United Corp., 443 U.S. 173, 185 (1979).  Venue should not be confused with subject-matter jurisdiction, see Wachovia Bank v. Schmidt, 546 U.S. 303, 315-16 (2006), or with personal jurisdiction, see Leroy v. Great W. United Corp., 443 U.S. 173, 185 (1979)("The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum.").  "To the extent that they are relevant, the laws relating to venue give added protection to defendants beyond those that are provided by the statutory and constitutional prerequisites of personal jurisdiction." 14D C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3801, at 15 (3d ed. 2007).

The default federal venue provision allows a plaintiff to file in either: (i) his or her state's district court, so long as all defendants are also state residents; or (ii) in the district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(1-2).  If an action

cannot be brought in either of those scenarios, a plaintiff may bring his or her action in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3).

## LAW REGARDING TRANSFER OF VENUE

In 1948, Congress enacted the federal change-of-venue statute, codified at 28 U.S.C. § 1404, to allow a district court to transfer an action filed in a proper, though not necessarily convenient, venue to a more convenient district. That statute provides, in pertinent part: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) affords a district court broad discretion to adjudicate motions to transfer based on a case-by-case review of convenience and fairness. See Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991). "Recognizing that what is convenient for one litigant may not be convenient for the other, the Supreme Court has taught that section 1404(a) 'is intended to place discretion in the district court to adjudicate motions for transfer according to [a] . . . case-by-case consideration of convenience and fairness.'" Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d 973, 977 (7th Cir. 2010)(quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). "The statutory language guides the court's evaluation of the particular circumstances of each case and is broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice." Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d at 977. The statute permits a "flexible and individualized analysis," and affords district courts the opportunity to

look beyond a narrow or rigid set of considerations in their determinations.  Stewart Org., Inc. v.

Ricoh Corp., 487 U.S. at 29.

> Among the factors [a district court] should consider is the plaintiff's choice of
> forum; the accessibility of witnesses and other sources of proof, including the
> availability of compulsory process to insure attendance of witnesses; the cost of
> making the necessary proof; questions as to the enforceability of a judgment if
> one is obtained; relative advantages and obstacles to a fair trial; difficulties that
> may arise from congested dockets; the possibility of the existence of questions
> arising in the area of conflict of laws; the advantage of having a local court
> determine questions of local law; and, all other considerations of a practical
> nature that make a trial easy, expeditious and economical.

Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1516 (internal quotation marks

omitted).  See Tex. Gulf Sulphur v. Ritter, 371 F.2d 145, 147 (10th Cir. 1967)(stating the factors

that courts consider in making a venue determination under § 1404(a)).

28 U.S.C. § 1406 permits transfer to cure a venue defect.  It provides: "The district court

of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or

if it be in the interest of justice, transfer such case to any district or division in which it could

have been brought."  28 U.S.C. § 1406.  Although both § 1404(a) and § 1406(a) "were broadly

designed to allow transfer instead of dismissal, § 1406(a) provides for transfer from forums in

which venue is wrongly or improperly laid."  Van Dusen v. Barrack, 376 U.S. 612 (1964).  28

U.S.C. § 1631 addresses transfer to cure want of jurisdiction and provides that, when a

> court finds that there is a want of jurisdiction, the court shall, if it is in the interest
> of justice, transfer such action or appeal to any other such court in which the
> action could have been brought at the time it was filed or noticed, and the action
> shall proceed as if it had been filed in or noticed for the court to which it was
> transferred on the date upon which it was actually filed in or noticed for the court
> from which it was transferred.

28 U.S.C. § 1631.  The Tenth Circuit has held that 28 U.S.C. § 1631 was "specifically designed

for cases transferred from one federal court to another for lack of jurisdiction," and that it

"served to simplify the process and streamline its application."  Ross v. Colo. Outward Bound Sch., Inc., 822 F.2d 1524, 1527 (10th Cir. 1987).  It has held that, although many courts have interpreted § 1406(a) to permit transfer where personal jurisdiction is lacking, the enactment of § 1631 makes such a "strained" construction "no longer necessary."  Viernow v. Euripides Devel. Corp., 157 F.3d 785, 793 (10th Cir. 1998).

The "interest of justice" is a separate element of the transfer analysis that relates to the court system's efficient administration.  Van Dusen v. Barrack, 376 U.S. at 626-27.  "For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy."  Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d at 977 (citations omitted).  In some circumstances, "[t]he interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result."  Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d at 977 (citing Coffey v. Van Dorn Iron Works, 796 F.2d, 220-21 (7th Cir. 1986)).  The Tenth Circuit has interpreted the phrase -- "if it is in the interest of justice" -- to grant a district court discretion in making the decision to transfer the action.  Driggers v. Clark, 422 F. App'x 747, 749-50 (10th Cir. 2011)(unpublished)[3](citing Trujillo v. Williams, 465 F.3d 1210, 1222 (10th Cir. 2006)).

---

[3]Driggers v. Clark is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

## LAW REGARDING FORUM SELECTION CLAUSES

The Court has previously stated:

> Contrary to the general rule that a defendant's removal of the action from state court waives or cures any objection to improper venue in the federal court, an objection to the lack of proper venue based on a clause designating a court of another state or a foreign court as the exclusive forum is not waived or cured if the defendant removes the action from state court.

Knight Oil Tools, Inc. v. Unit Petrol. Co., No. CIV 05-0669 JB/ACT, 2005 WL 2313715, at *2 (D.N.M. Aug. 31, 2005)(Browning, J.)(citations omitted)(citing 17 James Wm. Moore, Moore's Federal Practice §§ 111.04[3][d], 111.36[5][a], at 111-42 to 111-43, 111-179 (3d ed. 2004)).

Accord Lambert v. Kysar, 983 F.2d 1110, 1113 n.2 (1st Cir. 1993)("[A] valid forum selection clause operates to render venue improper, not only under 28 U.S.C. § 1391 [the general venue statute] but also under 28 U.S.C. § 1441(a) [the removal statute].").  See Int'l Software Sys., Inc. v. Amplicon, Inc., 77 F.3d 112, 113-15 (5th Cir. 1996)(without discussing removal issue, affirming dismissal on improper venue grounds of action removed from state court when forum selection clause specified state courts of another state as exclusive forum); Spradlin v. Lear Siegler Mgmt. Servs. Co., 926 F.2d 865, 866 (9th Cir. 1991)(without discussing removal issue, affirming dismissal of removed action on improper venue grounds based on clause making Saudi Arabia the exclusive forum).

---

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds Driggers v. Clark and King v. PA Consulting Grp., Inc., 78 F. App'x 645 (10th Cir. 2003), have persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion.

"A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3)." K & V Sci. Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW"), 314 F.3d 494 (10th Cir. 2002) ("K & V Scientific Co., Inc. v. BMW"). The Tenth Circuit has observed that "[f]orum selection provisions are 'prima facie valid' and a party resisting enforcement carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances." Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 957 (10th Cir. 1992)(quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 15 (1972)). Only a showing of inconvenience "so serious as to foreclose a remedy, perhaps coupled with a showing of bad faith, overreaching or lack of notice would be sufficient to defeat a contractual forum selection clause." Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d at 958. Even if minor inconvenience would result, that inconvenience would not justify non-enforcement of the forum selection clause. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 596-97 (1991).

1.   **Choice-of-Law Issues and New Mexico Law Regarding Forum Selection Clauses.**

In Stewart Organization v. Ricoh Corp., the Supreme Court held: "Federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum selection clause." 487 U.S. at 32. "The Tenth Circuit, however, has never addressed which law applies to diversity cases when interpreting forum-selection clauses in general and when addressing transfer to a federal forum in particular." Knight Oil Tools, Inc. v. Unit Petrol. Co., 2005 WL 2313715, at *9. Notably, the Tenth Circuit has not drawn rigid distinctions between state and federal law when interpreting forum selection clauses, and has

applied federal law when interpreting these clauses when "there are no material discrepancies between [state] law and federal common law on these matters." Excell, Inc. v. Sterling Boiler & Mech., Inc., 106 F.3d 318, 320-21 (10th Cir. 1997)(not deciding the choice-of-law issue between Colorado law and federal law). The Court has recognized in the past that "New Mexico state courts have not had much opportunity to address forum-selection clauses." Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., No. CIV 10-1020 JB/LFG, 2010 WL 5559750, at *12 (D.N.M. Nov. 30, 2010)(Browning, J.). Relying on a case from the Tenth Circuit, the Court of Appeals of New Mexico has recognized that the general rule on enforcement of forum selection clauses is that, "when venue is specified in a forum selection clause with mandatory or obligatory language, the clause will be enforced." Mueller v. Sample, 2004-NMCA-075, ¶ 11, 93 P.3d 769, 773 (Ct. App. 2004)(citing K & V Scientific Co., Inc. v. BMW, 314 F.3d at 499). The Court has previously found that, "although New Mexico has not addressed forum-selection clauses in particular, its decisions relating to choice-of-law provisions indicate that New Mexico would apply the same rule as the Tenth Circuit as well." Knight Oil Tools, Inc. v. Unit Petroleum Co., 2005 WL 2313715, at *9.[4]

2.    **Enforceability of Forum Selection Clauses**.

The Supreme Court has noted that there is substantial overlap between precedent interpreting the enforceability of arbitration agreements and forum selection clauses. See Scherk v. Alberto-Culver Co., 417 U.S. 506, 518-19 (1974)("An agreement to arbitrate before a

---

[4]The Supreme Court of Texas has also relied on federal precedent to determine whether forum selection clauses are enforceable. See In re AIU Ins. Co., 148 S.W.3d 109, 118-19 (Tex. 2004)(relying on federal precedent in a discussion on the enforceability of forum selection clauses).

specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute."). The Supreme Court has stated that "an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion." Scherk v. Alberto-Culver Co., 417 U.S. at 518-19 (emphasis added). Reiterating this rule, the Tenth Circuit has stated: "A plaintiff seeking to avoid a choice provision on a fraud theory must, within the confines of Fed. R. Civ. P. 9(b) and 11, plead fraud going to the specific provision; the teachings of Scherk, interpreting M/S Bremen, require no less." Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d at 960. Thus, the Tenth Circuit requires that a party seeking to avoid a forum selection clause produce evidence showing that the arbitration provision is a product of fraud or coercion. See Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d at 960 ("Third, at no time did Riley offer any evidence on the stipulated issues tending to show that the arbitration provision (or any other choice provision, for that matter) was a product of fraud or coercion." (emphasis in original)). The Honorable Lourdes A. Martinez, United States Magistrate Judge for the District of New Mexico, has similarly stated that "[a] general claim of fraud or misrepresentation concerning an entire contract does not affect the validity of a forum selection clause." Mann v. Auto. Protection Corp., 777 F. Supp. 2d 1234, 1240 (D.N.M. 2011) (Martinez, J.).

The Supreme Court has rejected the notion that the parties must specifically negotiate a forum selection clause for it to be enforceable. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. at 593 ("[W]e do not adopt the Court of Appeals' determination that a nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the

subject of bargaining."). Accord Marinechance Shipping, Ltd. v. Sebastian, 143 F.3d 216, 221 (5th Cir. 1998)(holding that a forum selection clause in a seaman's employment contract was enforceable even when the parties did not negotiate for the provision). Judge Martinez has similarly held:

> This argument also fails because unequal bargaining position and form contracts do not invalidate forum selection provisions. The fact that Plaintiff is an individual and the contract was presented to him as a form contract does not invalidate the forum selection provision, and Plaintiff's belief that he could not negotiate or change the terms of the Agreement does not rise to the level of overreaching that would make it unreasonable or unfair to enforce the forum selection provision.

Mann v. Auto. Protection Corp., 777 F. Supp. 2d at 1240 (citations omitted)(citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. at 593-94).

Courts have also imposed a high standard for negating a forum selection clause on the basis that it is inconvenient. The Tenth Circuit has, for instance, stated:

> Finally, in Carnival Cruise Lines, the Court relied on M/S Bremen in enforcing a domestic forum selection clause, despite inconvenience to the plaintiffs. Only a showing of inconvenience so serious as to foreclose a remedy, perhaps coupled with a showing of bad faith, overreaching or lack of notice, would be sufficient to defeat a contractual forum selection clause.

> Riley suggests that enforcement of the choice of forum and law provisions is unreasonable because he effectively will be deprived of his day in court. The basis underlying this contention is his perception that recovery will be more difficult under English law than under American law. Riley will not be deprived of his day in court. He may, though, have to structure his case differently than if proceeding in federal district court. The fact that an international transaction may be subject to laws and remedies different or less favorable than those of the United States is not a valid basis to deny enforcement, provided that the law of the chosen forum is not inherently unfair. English law does not preclude Riley from pursuing an action for fraud and we agree with the Defendants that the Lloyd's Act does not grant statutory immunity for such claims. We have been shown nothing to suggest than an English court would not be fair, and in fact, our courts have long recognized that the courts of England are fair and neutral forums. Given the international nature of the insurance underwriting transaction, the

> parties' forum selection and choice of law provisions contained in the agreements
> should be given effect.

Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d at 958 (citations omitted). Judge Martinez has similarly held that, "[t]o invalidate a forum selection provision for reasons of inconvenience, however, a party must show that enforcement of the provision would cause an inconvenience 'so serious as to foreclose a remedy.'" Mann v. Auto. Protection Corp., 777 F. Supp. 2d at 1240 (quoting Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d at 958).

### 3. Permissive and Mandatory Forum Selection Clauses.

"The difference between a mandatory and permissive forum selection clause is that '[m]andatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum.'" Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc., 428 F.3d 921, 926 (10th Cir. 2005). "In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere." Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc., 428 F.3d at 926-27 (citation omitted). In K & V Scientific Co. v. BMW, the Tenth Circuit adopted the majority rule for enforcing forum selection clauses. See 314 F.3d at 500. Specifically, it concluded that, when venue is specified, such as when the parties designate a particular county or tribunal, and mandatory or obligatory language accompanies the designation, a forum selection clause will be enforced as mandatory. See K & V Scientific Co. v. BMW, 314 F.3d at 499.

In Milk 'N' More, Inc. v. Beavert, the Tenth Circuit held that the forum selection clause was mandatory and precluded removal of the case to federal court. See 963 F.2d at 1343. In that case, the defendant appealed an order remanding the breach-of-contract action to a Kansas state court. See 963 F.2d at 1343. The federal district court concluded that an enforceable forum

selection clause in the agreement required the remand.  See 963 F.2d at 1343.  The clause in the

Milk 'N' More, Inc. v. Beavert agreement provided:  "The parties herein have mutually agreed

that said lease and the purchase option agreement contained herein, where applicable, shall be

governed by the laws of the State of Kansas and the parties further agree that venue shall be

proper under this agreement in Johnson County, Kansas."  963 F.2d at 1343.  The federal district

court granted the motion to remand on the ground that the contractual agreement contained an

enforceable forum selection clause, relying on the principle that forum selection clauses are

"prima facie valid and should be enforced" unless shown to be unreasonable.  963 F.2d at 1344

(quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. at 10).  On appeal, the defendant

contended that the federal district judge erred in construing the clause as a mandatory agreement

between the parties to resolve any dispute under the contract exclusively in the state court in

Johnson County, Kansas; he said instead that the court should have construed the clause as

merely a permissive designation on venue.  See Milk 'N' More, Inc. v. Beavert, 963 F.2d at

1344.   The defendant contended that the district court erroneously construed the contract

language as an agreement making Johnson County, Kansas, the exclusive forum in which the

parties could resolve disputes that arose under the agreement.  See 963 F.2d at 1345.  The Tenth

Circuit affirmed, stating that the dispositive portion of the clause provided that "venue shall be

proper under this agreement in Johnson County, Kansas."  963 F.2d at 1345-46.  The Tenth

Circuit held: "We are persuaded that the district judge made the proper interpretation and

correctly enforced the clause."  963 F.2d at 1346.

In Milk 'N' More, Inc. v. Beavert, the Tenth Circuit stated that it was mindful that a

waiver of one's statutory right to be in federal court must be "clear and unequivocal."  963 F.2d

at 1346 (quoting <u>Regis Assocs. v. Rank Hotels (Mgmt.) Ltd.</u>, 894 F.2d 193, 195 (6th Cir. 1990)).

The Tenth Circuit acknowledged that, if there is ambiguity in the clause, the court should construe it against the drafter. <u>See</u> <u>Milk 'N' More, Inc. v. Beavert,</u> 963 F.2d at 1346. Nevertheless, the Tenth Circuit said that "[s]uch clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." 963 F.2d at 1346. The Tenth Circuit stated that the provision that "venue shall be proper under this agreement in Johnson County, Kansas" was "reasonably clear and the wording strongly points to the state court of that county." 963 F.2d at 1346. The Tenth Circuit said the use of the word "shall" generally indicates a mandatory intent unless a convincing argument to the contrary is made. 963 F.2d at 1346. In <u>Milk 'N' More, Inc. v. Beavert</u>, the Tenth Circuit cited with approval <u>Intermountain Systems, Inc. v. Edsall Construction Co.</u>, 575 F. Supp. 1195, 1198 (D. Colo. 1983), stating that the case was particularly persuasive, because it held enforceable a similar clause: "It is agreed for purposes of this agreement, venue shall be in Adams County, Colorado." <u>Milk 'N' More, Inc. v. Beavert</u>, 963 F.2d at 1346. In <u>K & V Scientific Co. v. BMW</u>, the parties entered into a new agreement which, unlike their earlier agreement, contained a jurisdictional and choice-of-law provision, which stated: "Jurisdiction for all and any disputes arising out of or in connection with this agreement is Munich. All and any disputes arising out of or in connection with this agreement are subject to the laws of the Federal Republic of Germany." 314 F.3d at 496. The plaintiff filed suit, asserting various contract, tort, and statutory causes of action. <u>See</u> 314 F.3d at 497. The defendant removed the case to federal court, and moved to dismiss under to rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and improper venue. <u>See</u> 314 F.3d at 497. The

district court granted the defendant's motion to dismiss for improper venue. <u>See</u> 314 F.3d at 497. The district judge concluded that the forum selection clause contained in the second confidentiality agreement was "unambiguous and enforceable," and demonstrated "[t]he parties' intent to locate jurisdiction for this action solely in the courts of Munich." 314 F.3d at 497. On appeal, the plaintiff argued that the clause's language contained no reference to venue, contained no language designating the courts in Munich as exclusive, and contained no language indicating that suit elsewhere is impermissible. <u>See</u> 314 F.3d at 497. The Tenth Circuit made the distinction between a venue provision which fixed venue in a certain location -- a mandatory clause -- versus one which merely granted jurisdiction to a certain place -- a permissive clause. The Tenth Circuit set forth an analysis for determining whether forum selection clauses within a contract are mandatory or permissive:

> This court and others have "frequently classified" forum selection clauses "as either mandatory or permissive." <u>Excell[, Inc. v. Sterling Boiler & Mech., Inc.]</u>, 106 F.3d [318,] 321 [(10th Cir. 1997)]. "Mandatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum." <u>Id</u>. (internal quotations omitted). "In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere." <u>Id</u>. (internal quotations omitted).

<u>K & V Scientific Co. v. BMW</u>, 314 F.3d at 498. The Tenth Circuit cited <u>Milk 'N' More, Inc. v. Beavert</u>, stating that the Tenth Circuit there had concluded that a forum selection clause stating "venue shall be proper under this agreement in Johnson County, Kansas" was mandatory. <u>K & V Scientific Co. v. BMW</u>, 314 F.3d at 498. The Tenth Circuit found, however, that no Tenth Circuit case had yet dealt with a forum selection clause similar to the one at issue.

The Tenth Circuit stated that, "generally speaking," the Courts of Appeals are in "agreement" that the following formula is to be used in determining whether the selection clause

is mandatory or permissive: "[W]here venue is specified [in a forum selection clause] with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified [in a forum selection clause], the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." K & V Scientific Co. v. BMW, 314 F.3d at 499 (alterations in original)(quoting Paper Express, Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 757 (7th Cir. 1992)).  The Tenth Circuit analyzed language from six forum selection clauses considered permissive, including four different forum selection clauses wherein the provision used the word "shall" together with the name of a court. K & V Scientific Co. v. BMW, 314 F.3d at 499.  The K & V Scientific Co. v. BMW formula for the four clauses using the word "shall" and considered permissive were:

> * "Any dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts, specifically of the Thessaloniki Courts." John Boutari [& Son, Wines & Spirits, S.A. v. Attiki Imp. & Distribs. Inc.], 22 F.3d [51,] 52 [(2d Cir. 1994)].
>
> . . . .
>
> * "The courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract." Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 76 (9th Cir. 1987).
>
> . . . .
>
> * "This agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York." Keaty [v. Freeport Indon., Inc.], 503 F.2d [955,] 956 [(5th Cir. 1974)] (concluding phrase was ambiguous and, when construed against drafter, was permissive).
>
> * "This agreement shall be governed by and construed in accordance with the laws of the Federal Republic of Germany. * * * Place of jurisdiction shall be Dresden." Hull 753 Corp. v. Elbe Flugzeugwerke GmbH, 58 F. Supp. 2d 925, 926 (N.D. Ill. 1999).

<u>K & V Scientific Co. v. BMW</u>, 314 F.3d at 499.  The other two examples of permissive clauses were:

> * "The laws and courts of Zurich are applicable."  <u>Caldas & Sons, Inc. v. Willingham</u>, 17 F.3d 123, 127 (5th Cir. 1994).
>
> . . . .
>
> * "Place of jurisdiction is Sao Paulo/Brazil."  <u>Citro Florida[, Inc. v. Citrovale, S.A.</u>], 760 F.2d 1231, 1231 (11th Cir. 1985)(concluding phrase was ambiguous and, when construed against drafter, was permissive).

<u>K & V Scientific Co. v. BMW</u>, 314 F.3d at 499.  The Tenth Circuit in <u>K & V Scientific Co. v. BMW</u> also noted that the courts had held the following clauses to be mandatory:

> * "[P]lace of jurisdiction . . . is the registered office of the trustee [in Germany], to the extent permissible under the law."  <u>Frietsch v. Refco, Inc.</u>, 56 F.3d 825, 827 (7th Cir. 1995); <u>see</u> <u>id</u>. at 829 (concluding that the phrase "to the extent permissible under the law" "would have no function if the [forum selection] clause were not mandatory -- if, in other words, a party could sue anywhere he wanted").
>
> * "In all disputes arising out of the contractual relationship, the action shall be filed in the court which has jurisdiction for the principal place of business of the supplier . . . .  The supplier also has the right to commence an action against the purchaser at the purchaser's principal place of business."  <u>Paper Express[, Ltd. v. Pfankuch Maschinen GmbH</u>], 972 F.2d at 755; <u>id</u>. at 756 (concluding the last sentence "would be appropriate and meaningful only if the clause were in fact mandatory").
>
> * "Licensee hereby agrees and consents to the jurisdiction of the courts of the State of Virginia.  Venue of any action brought hereunder shall be deemed to be in Gloucester County, Virginia."  <u>Docksider[, Ltd. v. Sea Tech., Ltd.,</u>] 875 F.2d [762,] 763 (9th Cir. 1989).

<u>K & V Scientific Co. v. BMW</u>, 314 F.3d at 499-500 (footnote omitted).

Using the majority rule, the Tenth Circuit had little trouble concluding that the forum selection clause at issue in <u>K & V Scientific Co. v. BMW</u> was permissive.  <u>See</u> 314 F.3d at 500.

The clause referred only to jurisdiction and did so in non-exclusive terms.  <u>See</u> 314 F.3d at 500.

A clause is mandatory, in accordance with <u>K & V Scientific Co. v. BMW</u>, only when the venue

is specific with mandatory language.  <u>See</u> 314 F.3d at 500.  Mandatory language is venue

coupled with such terms as "exclusive," "sole," or "only."  314 F.3d at 500.  If the paragraph is

ambiguous -- capable of being construed as either permissive or mandatory -- the paragraph is

deemed to be permissive.  The Tenth Circuit in <u>K & V Scientific Co. v. BMW</u> stated:

> Even if the clause were deemed to be ambiguous (i.e., capable of being construed as either permissive or mandatory), the rule in this circuit and others is that the clause must be construed against the drafter, in this case defendant.  <u>See</u> <u>Milk 'N' More</u>, 963 F.2d at 1346 (holding "if there is any ambiguity in the clause [the court] should construe it against the drafter").  Accordingly, the clause would be deemed permissive.

344 F.3d at 500-01 (citations omitted).

In an unpublished decision that followed <u>K & V Scientific Co. v. BMW</u>, the Tenth

Circuit clarified that the <u>K & V Scientific Co. v. BMW</u> decision addresses the issue

> whether a recognition-of-jurisdiction provision implies an exclusive selection of venue.  Use of mandatory language like "shall" in a clause dealing <u>directly with venue</u> carries stronger implications regarding the intent to designate an exclusive forum.  <u>See</u> <u>Milk 'N' More</u>, 963 F.2d at 1346 (holding clause stating that "venue shall be proper . . . in" effected an exclusive designation of forum).  When, as here, the relation of such language to the question of venue is at most derivative, through a jurisdictional provision, decisions such as "<u>Milk 'N' More</u> . . . are of little assistance in resolving the . . . dispute."  <u>K & V Scientific</u>, 314 F.3d at 498-99.

<u>King v. PA Consulting Grp., Inc.</u>, 78 F. App'x 645, 648 n.2 (10th Cir. 2003)(unpublished)

(emphasis in original).  The Tenth Circuit, in <u>American Soda, LLP v. U.S. Filter Wastewater</u>

<u>Group, Inc.</u>, has also recognized that a party to a contract can waive venue in federal court in a

forum selection clause, thus requiring remand the dispute to state court:

The parties not only consented to the jurisdiction of the Colorado state courts, they went a step further by designating the state courts or arbitration as "the exclusive forum for the resolution of any disputes related to or arising out of [the contract]." We conclude that by consenting to state court jurisdiction and selecting the state courts as the "exclusive forum," the parties indicated their intent to make venue exclusive in state court with respect to any disputes not resolved in arbitration. Because the forum selection clause at issue is mandatory, U.S. Filter unequivocally waived its right to remove this lawsuit to federal court.

428 F.3d at 927.

### 4. Coverage of Tort Claims Under a Forum Selection Clause.

Judge Martinez has stated: "Even though the Tenth Circuit has not addressed this issue, the United States Supreme Court has applied a forum selection provision in a case involving tort claims." Mann v. Auto Protection Grp., 777 F. Supp. 2d at 1243 (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. at 588). The Court has followed the same approach in Knight Oil Tools, Inc. v. Unit Petroleum Co., looking also at whether "the forum-choice provision involved . . . is broad enough to include tort actions." 2005 WL 2313715, at *13 ("That the tort and breach of contract claim involve the same operative facts also counsels that the forum-selection clause apply to the tort claim."). In a case where there was a contract between a passenger and a cruise line, and the passenger asserted tort causes of action against the cruise line, the Supreme Court enforced a forum selection clause against the passenger. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. at 588-90 ("We granted certiorari to address the question whether the Court of Appeals was correct in holding that the District Court should hear respondents' tort claim . . . . Because we find the forum-selection clause to be dispositive of this question, we need not consider petitioner's constitutional argument as to personal jurisdiction."). "In addition, other Courts of Appeal have held that where tort claims 'ultimately depend on the existence of a contractual relationship' between the parties, such claims are covered by a contractually-based

forum selection clause, despite the 'pleading of alternative non-contractual theories of liability.'"

Mann v. Auto Protection Grp., 777 F. Supp. 2d at 1243 (quoting Coastal Steel Corp. v. Tilghman

Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir. 1983), overruled on other grounds by Lauro

Lines, s.r.l. v. Chasser, 490 U.S. 495 (1989))(citing Lambert v. Kysar, 983 F.2d at 1121-22).

## ANALYSIS

The Court will grant the MTD.  First, the Court concludes that it lacks personal

jurisdiction over Southampton Union.  The Court does not have general personal jurisdiction

over Southampton Union, because Resource Associates has not established that Southampton

Union's contacts with New Mexico "are so 'continuous and systematic' as to render them

essentially at home in [New Mexico]."  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564

U.S. at 919 (quoting Int'l Shoe Co. v. Washington, 326 U.S. at 317).  The Court also does not

have specific jurisdiction over Southampton Union, because it does not have sufficient minimum

contacts with New Mexico to comport with the federal Due Process Clause's requirements.

Second, the Court will transfer this action to the Eastern District of New York pursuant to 28

U.S.C. § 1631.

## I.     THE RECIPROCAL AGREEMENT DOES NOT CONTAIN A FORUM SELECTION CLAUSE.

Resource Associates' Complaint implies that the Reciprocal Agreement contains a forum

selection clause, designating New Mexico as the exclusive situs for litigation arising out of the

Reciprocal Agreement.  In some states, forum selection clauses -- which are conferrals of

exclusive jurisdiction -- "have been specifically recognized as including *consents to* personal

jurisdiction."  Rescuecom Corp. v. Chumley, 522 F. Supp. 2d 429, 443 (N.D.N.Y. 2007)(Scullin,

J.)(citing cases standing for this proposition)(emphasis in original).  See Suntrust Bank v. G.R.

Auto Supply, Inc., 2007 WL 2226058, at *1 (N.D. Ga. 2007)(Duffey, J.)("The Court further finds that the parties consented to personal jurisdiction in this court by agreeing in the loan contract to have all disputes heard in Georgia.").   The Court concludes, however, that the Reciprocal Agreement does not contain a forum selection or a choice-of-law clause.   Paragraph nine of the Complaint states: "At the time the Reciprocal Agreement was entered into, Plaintiff's office was located in Farmington, San Juan County, New Mexico, as shown on Page 4 of the Reciprocal Agreement, thereby *requiring* any litigation over the Reciprocal Agreement to be brought in the District Court of San Juan County, New Mexico."   Complaint ¶ 9, at 3 (underline and italics added).   In its Reply, however, Southampton Union maintains that there is no choice of law or forum selection clause in the Reciprocal Agreement.   See Reply at 2.   At the hearing on the MTD, Southampton Union further emphasized that the Reciprocal Agreement does not contain a forum selection clause and contended that the reference to any litigation being brought in the district court of San Juan County, New Mexico, comes from the Complaint and not from the Reciprocal Agreement itself.   See Tr. at 3:5-4:18 (Court, Gabaldon).

The Court has examined the Reciprocal Agreement and agrees with Southampton Union that it does not contain a forum selection clause.   Page 4[5] of the Reciprocal Agreement -- which Resource Associates cites to in its Complaint -- does not contain a forum selection clause, but rather, sets forth the names, addresses, and signatures of the parties to the Reciprocal Agreement. See Reciprocal Agreement at 4, filed December 14, 2015 (Doc. 1-2)("Reciprocal Agreement").

---

[5]The internal pagination of the Reciprocal Agreement begins on page 6 -- with the document's title "Reciprocal Agreement -- and ends on page 9 -- with a signature block.   In other words, the Reciprocal Agreement is 4 pages in total.   When Resource Associates cites to page 4 of the Reciprocal Agreement in its Complaint, the Court assumes that it is referring to page 9, the fourth and final page of the agreement.   When citing to the Reciprocal Agreement, the Court will follow the Complaint's practice of citing to page 1, 2, 3, or 4.

Page four of the Reciprocal Agreement reflects Resource Associates' allegation that, "[a]t the time the Reciprocal Agreement was entered into, Plaintiff's office was located in Farmington, San Juan County, New Mexico," Complaint ¶ 9, at 3, in that it lists Farmington as the location of Resource Associates' office under Resource Associates' signature block, <u>see</u> Reciprocal Agreement at 4. Page 4 does not, however, contain a forum selection or choice-of-law clause. <u>See</u> Reciprocal Agreement at 4. The Court has also examined the remainder of the Reciprocal Agreement. Page 8 of the Reciprocal Agreement contains a section entitled "Other Terms, Jurisdiction and Attorney Fees," but that section likewise does not contain a forum selection or choice-of-law clause. <u>See</u> Reciprocal Agreement at 3. That the Reciprocal Agreement does not contain a forum selection clause is consistent with Resource Associates' statement in its Response that, "[o]n the contrary, <u>the parties' failure to include a forum selection clause within their Agreement -- either designating New Mexico or New York as the exclusive forum for resolving disputes</u> -- means that personal jurisdiction should be determined by operation of law." Response at 9 (emphasis added). Because the Reciprocal Agreement does not contain a forum selection clause, Southampton Union did not consent to personal jurisdiction in the District of New Mexico on that basis.

## II. THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER SOUTHAMPTON UNION.

To exercise personal jurisdiction over a nonresident defendant in a diversity action, federal courts must satisfy state law and federal due process. <u>See</u> <u>Doering v. Copper Mountain, Inc.</u>, 259 F.3d 1201, 1209-10 (10th Cir. 2001). New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." <u>Tercero v.</u>

Roman Catholic Diocese of Norwich, Conn., 2002-NMSC-018, ¶ 6, 48 P.3d at 54.  Indeed, the

Supreme Court of New Mexico has explained:

> Because we have interpreted the long-arm statute as extending our personal
> jurisdiction as far as constitutionally permissible, it is not necessary to determine
> whether the [defendant] transacted business within New Mexico in any technical
> sense.  When the state courts have construed the state long-arm statute as being
> coextensive with the requirements of due process, "the usual two-step analysis
> collapses into a single search for the outer limits of what due process permits."

Fed. Deposit Ins. Corp. v. Hiatt, 1994-NMSC-044, ¶ 7, 872 P.2d at 881.  See Shrader v.

Biddinger, 633 F.3d at 1239 ("Where . . . the state long arm statute supports personal jurisdiction

to the full extent constitutionally permitted, due process principles govern the inquiry.").  Thus,

the long-arm statute inquiry and the due-process inquiry merge, and the determinative inquiry is

whether exercising personal jurisdiction over Southampton Union comports with due process.

See OMI Holdings, Inc. v. Royal Ins. Co. of Can., 149 F.3d at 1090; Fabara v. GoFit, LLC, 308

F.R.D. at 400; Walker v. THI of New Mexico at Hobbs Center, 801 F. Supp. 2d 1128, 1143

(D.N.M. 2011)(Browning, J.).

    The due-process analysis involves two steps.  See Fabara v. GoFit, LLC, 308 F.R.D. at

400.  "First, the nonresident must have 'minimum contacts' with the forum state."  Fabara v.

GoFit, LLC, 308 F.R.D. at 400 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at

291).  A defendant may have "minimum contacts" with the forum state in one of two ways,

providing a court with either general or specific personal jurisdiction.  Trierweiler v. Croxton &

Trench Holding Corp., 90 F.3d 1523, 1532-33 (10th Cir. 1996)(citations omitted).  Depending on

the character and extent of a defendant's contacts, a court may exercise specific or general

personal jurisdiction.  See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. at 414.

While general personal jurisdiction allows the court to hear "any and all claims against" the

nonresident defendant, specific personal jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).

> General jurisdiction is based on an out-of-state defendant's "continuous and systematic" contacts with the forum state, and does not require that the claim be related to those contacts. Specific jurisdiction, on the other hand, is premised on something of a quid pro quo: in exchange for "benefitting" from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts.

Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1078. Thus, "[s]uch contacts may give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum-related activities." Shrader v. Biddinger, 633 F.3d 1235, 1239 (10th Cir. 2011). Second, exercising personal jurisdiction over the defendant must comport with "traditional notions of fair play and substantial justice." Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1070 (internal quotation marks omitted). In this case, although exercising personal jurisdiction over Southampton Union comports with "traditional notions of fair play and substantial justice," the Court cannot exercise personal jurisdiction over Southampton Union, because Southampton Union does not have the requisite "minimum contacts" with New Mexico. Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d at 1532-33.

### A. THE COURT DOES NOT HAVE GENERAL PERSONAL JURISDICTION OVER SOUTHAMPTON UNION.

Resource Associates conceded at the March 8, 2016, hearing on the MTD that it does not contend that the Court has general jurisdiction over Southampton Union. See Tr. at 12:4-10 (Muehlenweg)("We are not asserting general jurisdiction."). The Court agrees that it lacks

general jurisdiction over Southampton Union. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. at 919 (citing Int'l Shoe Co. v. Washington, 326 U.S. at 317). In this case, the Court does not have general jurisdiction over Southampton Union because, Southampton Union's affiliations with New Mexico are not so "'continuous and systematic' as to render them essentially at home in [New Mexico]." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. at 919 (citing Int'l Shoe Co. v. Washington, 326 U.S. at 317). The only question, therefore, is whether the Court can assert specific jurisdiction over Southampton Union.

**B.    THE COURT DOES NOT HAVE SPECIFIC PERSONAL JURISDICTION OVER SOUTHAMPTON UNION.**

"The specific jurisdiction analytical scheme is two-fold." Klein Frank, P.C. v. Girards, 932 F. Supp. 2d 1203, 1210 (D. Colo. 2013)(Brimmer, J.). The Court must first determine whether Southampton Union has such minimum contacts with New Mexico that it "should reasonably anticipate being haled into court" here. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297. Within this inquiry, the Court must decide whether Southampton Union purposefully directed its activities at residents in the forum, see Burger King Corporation v. Rudzewicz, 471 U.S. at 472, and whether Resource Associates' claim arises out of or results from "actions by . . . defendant[s] . . . that create a substantial connection with the forum State," Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 109 (1987)(internal quotations omitted). Second, if the Court concludes that Southampton Union's actions create sufficient minimum contacts, it must consider whether the exercise of personal jurisdiction over

Southampton Union offends "traditional notions of fair play and substantial justice." Klein Frank, P.C. v. Girards, 932 F. Supp. 2d at 1211 (quoting Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. at 113). "This latter inquiry requires a determination whether the Court's exercise of personal jurisdiction over defendants is 'reasonable' in light of the circumstances of the case." Klein Frank, P.C. v. Girards, 932 F. Supp. 2d at 1211. In this case, although exercising personal jurisdiction over Southampton Union comports with "traditional notions of fair play and substantial justice," the Court cannot exercise personal jurisdiction over Southampton Union, because Southampton Union does not have the requisite "minimum contacts" with New Mexico. Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d at 1532-33.

Resource Associates argues that the Court can exercise specific jurisdiction, because Southampton Union purposefully availed itself of the benefits and protections of the State of New Mexico, given that: (i) it voluntarily initiated and pursued a business relationship with Resource Associates, which Southampton knew was a New Mexico company, through a series of telephone and email communications; (ii) it entered into the Reciprocal Agreement with Resource Associates, thereby undertaking continuing obligations entailing contact with New Mexico; (iii) the parties' transactions involved affirmative commitments by Southampton Union to cooperate with, communicate with, and remit payment to a New Mexico company; and (iv) the Reciprocal Agreement into which Resource Associates and Southampton Union entered involved the performance of sustained interactions and mutual duties taking place over an extended period of time that could have potentially continued during the two-year duration of the grant. See Response at 7-8.

Southampton Union, on the other hand, contends that it has not established minimum contacts with the state of New Mexico.  See Reply at 2.  It points out that it has never conducted any business in New Mexico, that no representative of Southampton Union has ever visited New Mexico, and that the only contacts between Resource Associates and Southampton Union were by telephone and email correspondence.  See Reply at 2.  It maintains that it did not initiate contact with Resource Associates, and that, the parties met via email solicitation that Resource Associates initiated through an email advertisement.  See Reply at 2.  Southampton Union asserts that Resource Associates initiated this transaction by directly soliciting Southampton Union through its Superintendent.  See Reply at 2.  Southampton Union stresses that it responded to this direct solicitation for services which Resource Associates would provide in New York.  See Reply at 2.  Finally, Southampton Union contends that Resource Associates was to provide the grant application in this case to the New York State Education Department, located in New York, even if the work product was to transpire in New Mexico.  See Reply at 6.

The question "[w]hether a non-resident defendant has the requisite contacts with the forum state to establish in personam jurisdiction must be decided on the particular facts of each case."  AST Sports Science, Inc. v. CLF Distribution Ltd., 514 F.3d 1054, 1058 (10th Cir. 2008)(quoting Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 456 (10th Cir. 1996)(internal quotation marks omitted)).  "A contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum."  Benton v. Cameco Corp., 375 F.3d at 1077.  "However, 'with respect to interstate contractual obligations . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulations and

sanctions in the other State for the consequences of their activities.'"  Benton v. Cameco Corp., 375 F.3d at 1077 (quoting Burger King Corporation v. Rudzewicz, 471 U.S. at 473).  Relevant factors for assessing minimum contacts in a contract case include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."  AST Sports Science, Inc. v. CLF Distribution Ltd., 514 F.3d at 1058 (quoting Burger King Corporation v. Rudzewicz, 471 U.S. at 479).

The fountainhead of the Supreme Court's jurisprudence on personal jurisdiction based on contractual relationships is McGee v. International Life Insurance Company, 355 U.S. 220 (1957).  There, Lowell Franklin, a California resident, purchased a life insurance policy from the Empire Mutual Insurance Company, an Arizona corporation.  See 355 U.S. at 221.  In 1948, International Life Insurance Company agreed with Empire Mutual to assume its insurance obligations.  See 355 U.S. at 221.  International Life then mailed a reinsurance certificate to Franklin in California offering to insure him in accordance with the terms of the policy he held with Empire Mutual.  See 355 U.S. at 221.  Franklin accepted this offer and from that time until his death in 1950 paid premiums by mail from his California home to International Life's Texas office.  See 355 U.S. at 221-22.  Franklin's mother, Lulu McGee, was the beneficiary under the policy, and upon his death, she sent proof to International Life of Franklin's death.  See 355 U.S. at 222.  International Life refused to pay, claiming that he had committed suicide.  See 355 U.S. at 222.  Neither Empire nor International Life ever had any office or agent in California.  See 355 U.S. at 222.  Further, the record did not reflect that International Life had ever done any insurance business in California apart from the policy with Franklin.  See 355 U.S. at 222.

McGee recovered judgment in California, but Texas courts refused to enforce her judgment, holding that it was void under the Fourteenth Amendment, because the California courts did not have personal jurisdiction over International Life.  See 355 U.S. at 221.  The Supreme Court held that the Due Process Clause of the Fourteenth Amendment did not preclude the California court from entering a judgment binding on International Life.  See 355 U.S. at 222-23.  In reaching this conclusion, the Supreme Court observed:

> Today many commercial transactions touch two or more States and may involve parties separated by the full continent.  With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines.  At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

355 U.S. at 222-23.  Turning to the case before it, the Supreme Court concluded that the California court had jurisdiction over International Life, explaining that "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State."  355 U.S. at 223.  The Supreme Court further stated:

> The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died.  It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims.  These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable.  When claims were small or moderate individual claimants fre[q]uently could not afford the cost of bringing an action in a foreign forum -- thus in effect making the company judgment proof.  Often the crucial witnesses -- as here on the company's defense of suicide -- will be found in the insured's locality.  Of course there may be inconvenience to the insurer if it is held amenable to suit in California where it had this contract but certainly nothing which amounts to a denial of due process.  Cf. Travelers Health Ass'n v. Commonwealth of Virginia ex rel. State Corporation Comm., 339 U.S. 643 [(1950)].  There is no contention that respondent did not have adequate notice of the suit or sufficient time to prepare its defenses and appear.

355 U.S. at 223-24.

Approximately thirty years later, in 1985, the Supreme Court decided <u>Burger King Corporation v. Rudzewicz</u>.  There, the Supreme Court observed that personal jurisdiction in a contractual dispute does not "turn on 'mechanical' tests or on 'conceptualistic . . . theories of the place of contracting or performance,'" but rather, requires a "highly realistic approach."  471 U.S. at 478 (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. at 319).  Accordingly, relevant factors for assessing minimum contacts in a contract case include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."  <u>Burger King Corporation v. Rudzewicz</u>, 471 U.S. at 479.  In <u>Burger King Corporation v. Rudzewicz</u>, the Supreme Court concluded that personal jurisdiction existed, even though the nonresident defendant had not physically entered the forum state, because: (i) the defendant "reached out" to the forum state to enter into a franchising agreement with the plaintiff that "envisioned continuing and wide-reaching contacts" with the plaintiff in the forum state; (ii) the plaintiff and the defendant had engaged in extensive telephone communications; (iii) the franchising agreement provided that the franchise relationship was established in the forum state and that state's law governed the relationship; and (iv) the defendant was a sophisticated businessman and there was no unfairness in the business dealings that would make the assertion of personal jurisdiction unconstitutional.  471 U.S. at 479-85.

In this case, Resource Associates has produced the Reciprocal Agreement, which clearly references Resource Associates and Southampton Union as parties.  <u>See</u> Reciprocal Agreement at 1 ("Camblum Education, Inc, dba Voyager Learning (hereinafter the 'Vendor') and Southampton Union Free School District (hereinafter the 'Client') agree to contract with Resource Associates Grant Writing Services, Inc. (hereinafter the 'Provider') . . .").  The

Reciprocal Agreement, which sets forth terms "for grant proposal writing and other capacity building services defined herein," also evidences the prior negotiations and future consequences of an intended continuing business relationship. Reciprocal Agreement at 1-4. The Supreme Court has emphasized that "with respect to interstate contractual obligations . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King Corp. v. Rudzewicz, 471 U.S. at 473. In this case, Resource Associates, and not Southampton Union, reached out beyond New Mexico to New York to create a contractual relationship with Southampton Union. In or around September, 2013, Volinski, Southampton Union's Coordinator of Data and Assessment, contacted Nawrocki in New Mexico to inquire about engaging Resource Associates' services in connection with the Extended Day Grant. See Nawrocki Decl. ¶ 3, at 1. Volinski indicated that she had learned about Resource Associates through an email advertisement. See Nawrocki Decl. ¶ 3, at 1. This email advertisement "listed Resource Associates' New Mexico telephone number (with a 505 area code) and contained a link to Resource Associates' website, which featured information about the company's New Mexico headquarters." Nawrocki Decl. ¶ 4, at 1. See Oct. 4th Email from Nawrocki to Oftedal at 2-3. See Resource Associates Website at 1-16. Further, the subsequent telephone conversations and mailings do not change that analysis, for "phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." Benton v. Cameco Corp., 375 F.3d at 1077. The Tenth Circuit has explained:

> Certainly, telephone calls and letters may provide sufficient contacts for the exercise of personal jurisdiction. In proper circumstances, even a single letter or telephone call to the forum state may meet due process standards. *See Burger King*, 471 U.S. at 475 n.18 . . . ("So long as it creates a 'substantial connection'

with the forum, even a single act can support jurisdiction."). However, the exercise of jurisdiction depends on the *nature* of those contacts. The existence of letters or telephone calls to the forum state related to the plaintiff's action will not necessarily meet due process standards.

. . . .

The proper focus for analyzing these contacts is whether they represent an effort by the defendant to "purposefully avail[ ] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 375 U.S. [at] 253 . . . .

Rambo v. Am. S. Ins. Co., 839 F.2d at 1418 (citations and footnote omitted). The Court concludes that the nature of the telephone conversations or email conversations did not create a "substantial connection" with New Mexico. Benton v. Cameco Corp., 375 F.3d at 1076.

Unlike in Burger King Corporation v. Rudzewicz, where the Supreme Court concluded that personal jurisdiction existed, in this case, Southampton Union did not reach out to New Mexico to enter into an agreement that "envisioned continuing and wide-reaching contacts" with Resource Associates in the forum state. Burger King Corporation v. Rudzewicz, 471 U.S. at 479-85. Further, the Reciprocal Agreement in this case, unlike the contract at issue in Burger King Corporation v. Rudzewicz, did not provide that the parties' relationship was established in New Mexico or that New Mexico law governs the relationship. This case is also distinguishable from Benton v. Cameco Corp., where a Colorado resident, Benton, entered into a Memorandum of Understanding ("MOU") with Cameco Corp., a Canadian company. See 375 F.3d at 1077. In that case, Benton agreed to purchase uranium from Cameco Corp. for resale. 375 F.3d at 1076-77. After a dispute arose, Benton filed suit alleging that Colorado had specific personal jurisdiction over Cameco Corp. because:

[1] Cameco entered into [the MOU] with a Colorado resident that set forth the key terms of a joint venture;

[2] Cameco would have partially performed the transactions contemplated by the MOU in Colorado in that it would have made payments to Benton in Colorado;

[3] Cameco sent employees to Colorado to conduct a due diligence review of Benton's business in connection with the MOU;

[4] Cameco sent significant correspondence to Benton in Colorado; and

[5] Cameco committed a tortious act by interfering with Benton's business relationship, the effects of which were suffered in Colorado.

375 F.3d at 1076 (brackets in original). The Tenth Circuit ultimately concluded that Cameco Corp. had sufficient minimum contacts with Colorado to create specific jurisdiction. See 375 F.3d at 1078. The Tenth Circuit explained that, in addition to the contract's existence, the uranium transactions' business end -- the brokering of the deals, the parties' coordination, the exchange of money and information, and the joint-venture's decision-making -- would take place partially in Colorado. See 375 F.3d at 1077. The Tenth Circuit also recognized that telephone calls and letters provided additional evidence of the business relationship, but that

> [e]ven more significant . . . Cameco sent several of its employees to Mr. Benton's office in Colorado to conduct the due diligence review required by the MOU. Cameco not only established a business relationship with Mr. Benton's Colorado-based company on paper, but it also sent representatives to Colorado, the forum state, in order to maintain and further that business relationship.

375 F.3d at 1077 (emphasis added). The Tenth Circuit concluded that these factors taken together demonstrated that Cameco Corp. purposefully directed its activities at the forum's residents, and the litigation resulted from alleged injuries that arose or related to those activities. See 375 F.3d at 1077-78. In sum, Cameco Corp.'s "conduct and connection with the forum State [were] such that he should reasonably anticipate being haled into court there." 375 F.3d at 1076.

Unlike in Benton v. Cameco Corp., beyond the Reciprocal Agreement's existence, which Resource Associates initiated, the aim of the business relationship in this case was that the New

York State Education Department, located in New York, would award the Extended Day Grant to Southampton Union, a New York school district, even if Resource Associates was to produce the work product in New Mexico. <u>See</u> Reply at 6. More importantly, no Southampton Union employees traveled to New Mexico to meet with Resource Associates. The Court agrees with Southampton Union that the facts of this case are similar to those in <u>CABA Ltd. Liability v. Mustang Software, Inc.</u>, 1999-NMCA-089, 984 P.2d 803, in which the Supreme Court of New Mexico concluded that it did not have jurisdiction over an out-of-state defendant where the parties' contacts included: (i) the defendant approached the plaintiff's representatives at a conference in California; (ii) the plaintiff presented no facts showing that the defendant directly or through an agent, solicited, advertised, or otherwise initiated the business transaction within New Mexico; (iii) the parties entered into a contract by mail, facsimile, and telephone; (iv) the plaintiff endorsed the letter of intent in New Mexico; and (v) although the plaintiff was to perform its contractual obligations in New Mexico, the defendant was to perform its contractual duties outside of the state. See 1999-NMCA-089, ¶¶ 12-26, 984 P.2d at 808-812. In sum, the following factors weigh against a finding of specific jurisdiction in this case: (i) Southampton Union has never conducted any business in New Mexico; (ii) no Southampton Union representative has ever visited New Mexico; (iii) the only contacts between Southampton Union and Resource Associates were by telephone and email correspondence; (iv) Southampton Union did not initiate contact with Resource Associates, but, rather, the parties met via email solicitation that Resource Associates initiated through an email advertisement directly soliciting Southampton Union through its Superintendent; and (v) the grant application in this case was to

be provided to the New York State Education Department, located in New York, even if the work product was to transpire in New Mexico.

### C. EXERCISING PERSONAL JURISDICTION OVER SOUTHAMPTON UNION WOULD NOT OFFEND TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE.

Because the Court has concluded that minimum contacts are lacking, it is unnecessary to proceed to the second step of the due-process analysis. If Southampton Union had minimum contacts with the forum state, however, the Court would have to determine whether exercising personal jurisdiction would offend "traditional notions of fair play and substantial justice." Dudnikov v. Chalk & Vermilion Fine Arts, 514 F.3d at 1070 (internal quotation marks omitted). Southampton Union bears the burden of "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Dudnikov v. Chalk & Vermilion Fine Arts, 514 F.3d at 1078 (internal quotation marks omitted). This reasonableness analysis requires the weighing of five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

Pro Axess, Inc. v. Orlux Distrib., Inc., 428 F.3d 1270, 1279-80 (10th Cir. 2005)(internal quotation marks omitted). Weighing these five factors, the Court concludes that exercising personal jurisdiction over Southampton Union would not offend traditional notions of fair play and substantial justice.

1.    **Litigating the Case in New Mexico Would Not Place a Substantial Burden on Southampton Union.**

"The burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction."  AST Sports Sci., Inc. v. CLF Distrib. Ltd., 514 F.3d at 1061 (brackets omitted)(internal quotation marks omitted).  The Supreme Court has noted, however, that "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."  Burger King Corp. v. Rudzewicz, 471 U.S. at 474 (internal quotation marks omitted).  In Employers Mutual Casualty Co. v. Bartile Roofs, Inc., the Tenth Circuit concluded that this factor weighed "strongly in favor" of the plaintiff, because the burden was "relatively slight" for the defendant, a Utah resident, "to litigate in the adjacent state of Wyoming."  618 F.3d at 1162.  Similarly, in Fabara v. GoFit, LLC, the Court concluded that the burden was "relatively slight" for GoFit, LLC, an Oklahoma corporation, to litigate "in the adjacent state" of Oklahoma.  308 F.R.D. at 406 (citing Employers Mutual Casualty Co. v. Bartile Roofs, Inc., 618 F.3d at 1162).

Here, unlike in Employers Mutual Casualty Co. v. Bartile Roofs, Inc. and Fabara v. GoFit, LLC, the burden is not "relatively slight" for Southampton Union, a New York school district, to litigate in New Mexico, which is not an adjacent state.  Employers Mutual Casualty Co. v. Bartile Roofs, Inc., 618 F.3d at 1162.  The Court agrees with Resource Associates, however, that litigating the case in New Mexico would not place a substantial burden on Southampton Union.  Ultimately, "one side must bear the inconvenience of litigating on the road," and Southampton Union has "not indicated that [its] defense of this case would be hindered by the territorial limits on the [forum's] power to subpoena relevant witnesses, or

indeed hampered in any other significant way." Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1081 (internal quotation marks omitted).  The Court agrees with Resource Associates that the "potential relevant evidence" in this case is likely to consist mostly of documents, that electronic discovery renders this fact inconsequential, and that most witnesses are Southampton Union employees whose presence at trial can be arranged without compulsory process.  See Response at 12.  The Court can also find no authority supporting Southampton Union's assertion that that sovereign immunity in one jurisdiction -- if it even exists -- translates into a lack of personal jurisdiction in another jurisdiction.  See MTD at 7-8.  The Court is often called upon to decide the law of other states.  Accordingly, forcing Southampton Union to litigate this dispute in New Mexico is neither "gravely difficult" nor sufficiently "inconvenient," Burger King Corp. v. Rudzewicz, 471 U.S. at 478 (internal quotation marks omitted), and this factor weighs in Resource Associates' favor.

### 2. New Mexico's Interest in Adjudicating the Dispute is Neutral, or Slightly Favors New York Having a Stronger Interest.

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." AST Sports Sci., Inc. v. CLF Distrib. Ltd., 514 F.3d at 1062 (internal quotation marks omitted).  This factor favors New Mexico's exercise of jurisdiction over Southampton Union, because Resource Associates is a New Mexico company with its principal place of business in New Mexico, and New Mexico has an interest in providing it with a forum for its suit against Southampton Union.  See AST Sports Sci., Inc. v. CLF Distrib. Ltd., 514 F.3d at 1062 (citing Pro Axess, Inc. v. Orlux Distrib., Inc., 428 F.3d at 1280 n.7 (noting strength of this factor when a party is resident of forum state)).

"The state's interest is also implicated[, however,] where resolution of the dispute requires a general application of the forum state's laws." OMI Holdings, Inc. v. Royal Ins. Co. of Can., 149 F.3d at 1096. "In a diversity action, a federal district court must apply the substantive law of the state in which it sits . . . including principles regarding choice of law." Vandeventer v. Four Corners Elec. Co., Inc., 663 F.2d 1016, 1017 (10th Cir. 1981). If the case remains in New Mexico, New Mexico choice-of-law principles apply, including its "actual conflict" doctrine. Abraham v. WPX Energy Prod., 20 F. Supp. 3d 1244, 1268-69 (D.N.M. 2014)(Browning, J.). See Fabara v. GoFit, LLC, 308 F.R.D. at 407.

Resource Associates has asserted two claims against Southampton Union: (i) breach of contract, see Complaint ¶¶ 11-14, at 3-4 (Count 1); and (ii) quantum meruit, see Complaint ¶¶ 15-18, at 4 (Count 2). First, with respect to the breach-of-contract claim, under New Mexico choice-of-law rules, the Court would apply New Mexico law. "The false conflict doctrine allows a court to avoid a choice of law question when the laws of the involved states would produce identical results." City of Raton v. Arkansas River Power Authority, 611 F. Supp. 2d 1190, 1204-05 (D.N.M. 2008)(Browning, J.)(quoting Fowler Brothers, Inc. v. Bounds, 2008-NMCA-091, ¶ 9, 188 P.3d 1261, 1265). The Court of Appeals of New Mexico has explained that

> the focus of the doctrine is not on whether the laws are superficially identical as written, but whether the effect of laws would be identical as applied to a particular case. . . . The purpose of the doctrine is to avoid complicated choice-of-law questions when the answer to those questions would not make a difference.

Fowler Brothers, Inc. v. Bounds, 2008-NMCA-091, ¶ 9, 188 P.3d at 1265 (internal quotation marks and citations omitted). In this case, the Court concludes that both New Mexico and New York recognize a cause of action for breach of contract under similar terms. Under New Mexico law, "[t]he elements of a breach-of-contract action are the existence of a contract, breach of the

contract, causation, and damages." Abreu v. N.M. Children, Youth and Families Dep't, 797 F.

Supp. 2d 1199, 1247 (D.N.M. 2011)(Browning, J.).

> [A] complaint on breach of contract must allege: (1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and his performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of defendant's breach.

McCasland v. Prather, 1978-NMCA-098, ¶ 7, 585 P.2d 336, 338. Similarly, under New York

law, "[t]he elements of a breach of contract claim are: '(1) a contract; (2) performance by the

party seeking recovery; (3) breach of the contract by the other party; and (4) damages

attributable to the breach." Clamyer Intern, Inc. v. Shurtape Tech., Inc., 1999 WL 1225253, at

*2 (S.D.N.Y. 1999)(Carter, J.)(quoting Alesayi Beverage Corp. v. Canada Dry Corp., 947 F.

Supp. 658, 667-68 (S.D.N.Y. 1996)(Carter, J.)(citation omitted)). Thus, both states appear to

treat the substantive law on Count 1 similarly, and similar results would flow from an attempt to

bring this claim against Southampton Union either in New Mexico or in New York. In the case

of a false conflict, the Court is to apply the law of the forum state. See City of Raton v. Arkansas

River Power Authority, 611 F. Supp. 2d at 1205. The Court therefore concludes that a false

conflict exists with respect to Resource Associates' breach-of-contract claim and that, under

New Mexico choice-of-law rules, it would apply New Mexico law to Resource Associates'

breach-of-contract claim.

Second, with respect to Resource Associates' quantum meruit claim, the Court is hesitant

to dispose of the choice-of-law question based on a conclusion that New Mexico and New York

law do not differ or conflict. "New Mexico has long recognized actions for unjust enrichment,

that is, in quantum meruit or assumpsit."[6]   Ontiveros Insulation Co., Inc. v. Sanchez, 2000-NMCA-051, ¶ 11, 3 P.3d 695, 699 (citing Tom Growney Equip., Inc. v. Ansley, 1994-NMCA-159, ¶ 6, 888 P.2d 992, 994)(emphasis added).   In other words, the Supreme Court of New Mexico has characterized the theory of quantum meruit as a claim for unjust enrichment.   See Tom Growney Equip., Inc. v. Ansley, 1994-NMCA-159, ¶ 6, 888 P.2d at 994.   Under New Mexico law, to prevail on an unjust enrichment claim, a party must demonstrate that: "(1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust."   Ontiveros Insulation Co. v. Sanchez, 2000-NMCA-051, ¶ 11, 3 P.3d at 698-99.   Under New York law, to adequately plead an unjust enrichment claim, the plaintiff must allege "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."   Georgia Malone & Co., Inc. v. Rieder, 19 N.Y.3d 511, 516 (Ct. App. 2012)(quoting Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182 (Ct. App. 2011)(brackets and internal quotation marks omitted)).   Both New Mexico law and New York law generally preclude recovery in quasi contract where there is a valid and enforceable written contract governing a particular subject matter and the plaintiff seeks recovery for events arising out of the same subject matter.   See Elliott Indus. Ltd. P'ship v. BP America Prod. Co., 407 F.3d 1091, 1117 (10th Cir. 2005)(interpreting New Mexico law)("[T]he hornbook rule [is] that quasi-contractual remedies . . . are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue."); Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 389 (Ct. App. 1987)("It is impermissible, however, to

_____

[6]Consistent with New Mexico law, the Court will use the words unjust enrichment and quantum meruit interchangeably.

seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties.").

New Mexico and New York law differ, however, in so far as New Mexico law requires a plaintiff to prove that the defendant "has been knowingly benefitted" at the plaintiff's expense; New York law does not appear to impose such a requirement. The Court would therefore be hesitant to say that there is not a conflict between New Mexico's and New York's unjust enrichment laws. With respect to quantum meruit or unjust enrichment claims, New Mexico applies the Restatement (First) of Conflict of Laws § 453, which provides: "When a person is alleged to have been unjustly enriched, the law of the place of enrichment determines whether he is under a duty to repay the amount by which he has been enriched." Abraham v. WPX Energy Prod., LLC, 20 F. Supp. 3d 1244, 1265 (quoting Restatement (First) of Conflict of Laws § 453)(emphasis added). Accordingly, under New Mexico choice-of-law rules, because Southampton Union was allegedly unjustly enriched in New York, where it is located, New York law would apply to Resource Associates' quantum meruit or unjust enrichment claim.

A New York court, using New York choice-of-law principles, however, would apply New York law to both the breach-of-contract and the unjust enrichment claims. Similar to New Mexico, New York recognizes that, "[u]nder New York law, courts need not undertake a choice of law analysis unless there is a conflict between the applicable laws of the relevant jurisdictions, and in the absence of a conflict, a court may apply the substantive law of the forum." Liberty Mutual Ins. Co. v. Fairbanks Co., 2016 WL 1169511, at *4 (S.D.N.Y. March 22, 2016)(Koeltl, J.)(citing Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir.

2004)(Jacobs, J.)). As described above, comparing New Mexico and New York law governing breach of contract, both New York and New Mexico recognize a breach of contract cause of action under similar terms. Under New Mexico law, "[t]he elements of a breach-of-contract action are the existence of a contract, breach of the contract, causation, and damages." Abreu v. N.M. Children, Youth and Families Dep't, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011)(Browning, J.).

> [A] complaint on breach of contract must allege: (1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and his performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of defendant's breach.

McCasland v. Prather, 1978-NMCA-098, ¶ 7, 585 P.2d 336, 338. Similarly, under New York law, "[t]he elements of a breach of contract claim are: '(1) a contract; (2) performance by the party seeking recovery; (3) breach of the contract by the other party; and (4) damages attributable to the breach." Clamyer Intern, Inc. v. Shurtape Tech., Inc., 1999 WL 1225253, at *2 (quoting Alesayi Beverage Corp. v. Canada Dry Corp., 947 F. Supp. at 667-68 (citation omitted)). Thus, both states appear to treat the substantive law on Count 1 similarly, and that similar results would flow from an attempt to bring this claim against Southampton Union either in New Mexico or New York. In the absence of a conflict, under New York law, a New York court would apply the forum's substantive law, in this case, New York law. A New York court would therefore apply substantive New York law to the breach-of-contract claim.

Finally, with respect to Resource Associates' quantum meruit or unjust enrichment claim (Count 2), a New York court would apply substantive New York law. "Under New York law, courts need not undertake a choice of law analysis unless there is a conflict between the

applicable laws of the relevant jurisdictions, and in the absence of a conflict, a court may apply

the substantive law of the forum." Liberty Mutual Ins. Co. v. Fairbanks Co., 2016 WL 1169511,

at *4 (citing Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co., 363 F.3d at 143). As described

above, New Mexico and New York unjust enrichment laws differ in that, while New Mexico law

requires a plaintiff to prove that the defendant "has been knowingly benefitted" at the plaintiff's

expense, New York law does not appear to impose such a requirement. Rather than applying

New York law to Resource Associates' unjust enrichment or quantum meruit claim, a New York

court would therefore likely undertake a choice-of-law analysis. Under New York choice-of-law

rules, which do not follow the Restatement (First) of Conflict of Laws, as New Mexico does,

"[in] determining the law applicable to an unjust enrichment claim, New York courts determine

which jurisdiction has the most significant contacts to the dispute." Innovative BioDefense, Inc.

v. VSP Techs., Inc., 2013 WL 3389008, at *6 (S.D.N.Y. July 3, 2013)(Ramos, J.)(citing e.g.,

Hettinger v. Kleinman, 733 F. Supp. 2d 421, 444 (S.D.N.Y. 2010)(Pitman, M.J.)).

> The significant-contacts test focuses on the following five factors: (1) the place of
> contracting, (2) the place of negotiation, (3) the place of performance, (4) the
> location of the subject matter, and (5) the domicile or place of business of the
> contracting parties. *See In re Grand Theft Auto*, 251 F.R.D. [139,] 149
> [(S.D.N.Y. 2008)(Gram, J.)]. Furthermore, "the places of contracting and
> performance" weigh heavily in the choice of law determination. *Hettinger* [*v.
> Kleinmann*] 733 F. Supp. 2d at 444 (citation omitted).

Innovative BioDefense, Inc. v. VSP Techs., Inc., 2013 WL 3389008, at *6. Here, New York

has the most significant contacts with the dispute, and a New York court would likely apply

its substantive law. Resource Associates initiated its business relationship with Southampton

Union by sending an email advertisement to Southampton Union, located in New York. See

Feb. 4th Email Chain at 1-5; Nawrocki Decl. ¶ 4, at 1; Oct. 4th Email from Nawrocki to

Oftedal at 2-3. The parties subsequently negotiated the Reciprocal Agreement by email and telephone, and the parties executed the agreement in New Mexico and New York. See Nawrocki Decl. ¶ 3, at 1; id. ¶¶ 5-7, at 2; Oct. 4th Email from Nawrocki to Oftedal at 1; Oftedal Decl. ¶ 5, at 1; Oct. 8th Email from Oftedal to Volinski at 4; Oct. 9th Email from Volinski to Oftedal at 3. The Reciprocal Agreement centered around Resource Associates preparing an Extended Day Grant application, which it submitted to the State of New York Department of Education. See Oftedal Decl. ¶¶ 8-9, at 2; Complaint ¶ 4, at 2. Resource Associates succeeded in its work on behalf of Southampton Union, in that in June, 2014, the State of New York Department of Education awarded an Extended Day Grant to Southampton Union in the amount of $2,572,402.00. See Oftedal Decl. ¶ 9, at 2; Complaint ¶ 4, at 2. On Tuesday, October 7, 2014, the Southampton Board voted to reject the $2,572,402.00 state grant that would have extended the school year for elementary and intermediate students by 300 hours, most likely by expanding the typical school day. See Complaint ¶ 5, at 2. The Southampton Board rejected the grant because of concerns of having kids spend so much time in the classrooms and whether the schedule changes would be sustainable once the grant expires. See Complaint ¶ 5, at 2. Although Resource Associates performed the grant writing in New Mexico, a New York court would likely conclude that the weight of the factors would favor application of New York unjust enrichment law.

Resource Associates is a New Mexico corporation doing business in the State of New Mexico, with an office in Farmington in San Juan County, which is the principal location of Resource Associates' day-to-day operations. See Complaint ¶ 1, at 1; Oftedal Decl. ¶ 2, at 1. "Resource Associates' business focuses on assisting nonprofit organizations, schools, businesses,

government agencies and other entities with identifying and obtaining grants." Oftedal Decl. ¶ 3, at 1. That Resource Associates is a New Mexico company with its principal place of business in New Mexico, and New Mexico has an interest in providing it with a forum for its suit against Southampton Union, favors New Mexico's exercise of jurisdiction over Southampton Union. See AST Sports Sci., Inc. v. CLF Distrib. Ltd., 514 F.3d at 1062 (citing Pro Axess, Inc. v. Orlux Distrib., Inc., 428 F.3d at 1280 n.7). Under New Mexico choice-of-law rules, however, the Court would apply New Mexico law to the breach-of-contract claim and New York law to the unjust enrichment claim. Further, a New York court, under New York choice of law rules, would apply New York law to both of Resource Associates' claims. Accordingly, the Court concludes that New Mexico's interest in adjudicating the dispute is neutral, or slightly favors New York having a stronger interest.

### 3. Resource Associates' Interest in Convenient and Effective Relief is Neutral.

"This factor hinges on whether the plaintiff may receive convenient and effective relief in another forum." AST Sports Science, Inc. v. CLF Distribution Ltd., 514 F.3d at 1062 (brackets omitted)(internal quotation marks omitted). When applying this factor, courts note that it "may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing [it] to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd., 488 F.3d 1282, 1294 (10th Cir. 2007)(internal quotation marks omitted).

Nothing in the record suggests that Resource Associates' "chances of recovery will be greatly diminished by forcing [it] to litigate in another forum." TH Agric. & Nutrition, LLC v.

Ace European Grp., Ltd., 488 F.3d at 1294 (internal quotation marks omitted).  Unlike in Fabara v. GoFit, LLC, however, where the plaintiff would have been required to litigate in the adjacent state of Oklahoma, here, it would be more expensive and burdensome for Resource Associates to litigate this case in New York.  The Court has a high degree of confidence that a federal court in New York would be a fair forum that would give Resource Associates relief if it is entitled to relief.  Accordingly, because litigating in New York would not greatly reduce Resource Associates' chances of recovery, but would be more expensive and burdensome, this factor is neutral.

       **4.**       **The Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution of Controversies is Neutral.**

"This factor asks whether the forum state is the most efficient place to litigate the dispute." AST Sports Sci., Inc. v. CLF Distrib. Ltd., 514 F.3d at 1062 (internal quotation marks omitted).  "Key to this inquiry are the location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd. 488 F.3d at 1296 (internal quotation marks omitted).

The location of witnesses weighs slightly in favor of Resource Associates.  Although it is impossible to say for certain at this stage of the case, Resource Associates likely has all of its witnesses in New Mexico and Southampton Union likely has all of its witnesses in New York.  At the hearing on the MTD, Southampton Union also suggested, however, that there is another party or office to this contract, which is based out of Dallas, Texas.  See Tr. at 8:8-12 (Gabaldon).  The Reciprocal Agreement indeed reflects that Camblum Education, Inc., dba Voyager Learning is a party to the Reciprocal Agreement and the address below Camblum

Education's signature line on page 4 of the agreement lists a Dallas office. <u>See</u> Reciprocal Agreement at 1, 4. Accordingly, some witnesses might reside in Dallas, and Texas is adjacent to New Mexico. The location of the witnesses therefore weighs slightly in Resource Associates' favor.

Next, as already noted, if New Mexico choice-of-law rules apply, New Mexico law governs the breach-of-contract claim and New York law governs the unjust enrichment claim. If New York choice-of-law rules apply, however, New York law governs both claims. This suggests that New York might be the most efficient place to litigate the dispute. Finally, Resource Associates or Southampton Union could intend to join Camblum Education as a party to this action. According to Camblum Education's 2015 Annual Report, Camblum Education is a Delaware corporation and its principal place of business is Dallas. <u>See</u> CAMBIUM LEARNING GROUP ANNUAL REPORT 2015 at 1, http://www.investor.cambiumlearning.com/phoenix.zhtml?c=93447&p=irol-reportsannual (last visited June 13, 2016). Southampton Union has not, however, offered any evidence to prove that Camblum Education is more likely subject to personal jurisdiction in New York than in New Mexico. The need to prevent piecemeal litigation is therefore neutral. In reality, neither New Mexico nor New York may have jurisdiction over Camblum Education for Resource Associates' claims. Given that the witnesses' location weighs -- if at all -- in Resource Associates' favor, New York law entirely or partially governs Resource Associates' claims, and it is unclear whether litigating this case in New Mexico versus New York is more likely to prevent piecemeal litigation, this factor is collectively neutral.

5.    **The States' Interests in Their Substantive Social Policies Weighs in Favor of Resource Associates.**

This factor considers all of the relevant states' interests in "advancing fundamental substantive social policies." OMI Holdings, Inc. v. Royal Ins. Co. of Can., 149 F.3d at 1097. "[A]nalysis of this factor focuses on whether the exercise of personal jurisdiction by [the forum state] affects the substantive social policy interests of other states or foreign nations." OMI Holdings, Inc. v. Royal Ins. Co. of Can., 149 F.3d at 1097. The parties have not focused their arguments on the question whether the exercise of personal jurisdiction in New Mexico would negatively affect the social policy interests of New York or of any other state. At the hearing on the MTD, however, Resource Associates stated:

> You know, in terms of the forum state's interest in resolving the dispute, I think that's equivalent either place. We have a New Mexico based company who ought to be entitled to pursue its claims in a convenient forum. That goes to number 3 as well, which is the interest in receiving convenient and effective relief.

> You know, is the interstate judicial system's interest in obtaining an efficient resolution, is that going to be enhanced by moving this to New York? Probably not. I think this Court certainly has the capacity, and my guess is -- although I don't have specific facts -- it might actually move more quickly and efficiently through this court system, than taking it up to the Southern District of New York.

> You know, in terms of furthering fundamental substantive social policy --

Tr. at 17:9-18:1 (Muehlenweg). The Court has not identified any substantive social policies in other states that a New Mexico court's adjudication of this matter would undermine. This factor therefore weighs in Resource Associates' favor.

In sum, the balance of factors weighs in Resource Associates' favor. It therefore would not offend traditional notions of fair play and substantial justice to subject Southampton Union to

personal jurisdiction here. Because Resource Associates has not demonstrated the requisite minimum contacts, however, the Court cannot properly exercise personal jurisdiction over Southampton Union. Accordingly, the Court will grant the MTD.

**III.    THE COURT WILL TRANSFER THIS ACTION TO THE EASTERN DISTRICT OF NEW YORK UNDER 28 U.S.C. § 1631.**

The MTD is styled as a motion to dismiss for lack of personal jurisdiction or to transfer venue to the federal district court in New York. <u>See</u> MTD at 1. As Resource Associates notes in its Response, however, Southampton Union does not identify to which federal district court of New York it seeks to transfer venue. <u>See</u> Response at 14. Resource Associates assumes that Southampton Union is asking the Court to transfer venue to the Eastern District of New York, which covers Southampton Union's location on Long Island. <u>See</u> Response at 14. In its Reply, Southampton Union confirms that it is asking the Court to transfer these proceedings to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a). <u>See</u> Reply at 8. Transfer of cases is authorized by 28 U.S.C. § 1404(a), which states in part: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The intent of § 1404(a) is to "place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" <u>Chrysler Credit Corp. v. Country Chrysler, Inc.</u>, 928 F.2d at 1516. First, the parties do not dispute that the Eastern District of New York is a district where this action "might have been brought." 28 U.S.C. § 1404(a). Under 28 U.S.C. § 1391(b), venue would be proper in the Eastern District of New York, because it is "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Southampton

Union is the only defendant in this case, and it "resides" in the Eastern District of New York, because it "is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." 28 U.S.C. § 1391(c)(2).

Second, the Court has not found any Supreme Court or Tenth Circuit decision that has addressed whether a transferor court, to effect a valid transfer under § 1404(a), must first have personal jurisdiction over the defendants. See Beh v. Ostergard, 657 F. Supp. 173, 178 (D.N.M. 1987)(Conway, J.)("Neither the United States Supreme Court nor the 10th Circuit has considered this issue."). "The Court relies on guidance from other circuits or districts which have considered this question and analogous issues." Beh v. Ostergard, 657 F. Supp. at 178. "The clear majority of courts, [however], which have considered this question hold that lack of in personam jurisdiction does not, in and of itself, preclude transfer under § 1404(a)." Beh v. Ostergard, 657 F. Supp. at 178 (citing e.g., Koehring Co. v. Hyde Construction Co., 324 F.2d 295, 297-98 (5th Cir. 1964)(Wisdom, J.); Reyno v. Piper Aircraft Co., 630 F.2d 149, 164-165 (3d Cir. 1980)(Adams, J.), rev'd on other grounds, 454 U.S. 235 (1982); Torres v. Torres, 603 F. Supp. 440, 442 (E.D.N.Y. 1985)(McLaughlin, J.); Welsh v. Cunard Lines, Ltd., 595 F. Supp. 844, 845 (D. Ariz. 1984)(Browning, J.)). The Tenth Circuit has instructed however, that "after the enactment of [28 U.S.C. § 1631], where the court determines that it lacks jurisdiction . . . the correct course is to transfer the action pursuant to § 1631." Trujillo v. Williams, 465 F.3d at 1224 (quoting Ross v. Colorado Outward Bound School, Inc., 822 F.2d 1524, 1527 (10th Cir. 1987)(noting that 28 U.S.C. § 1631, as opposed to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a), controls a federal court's action when it finds that it lacks jurisdiction). See, e.g., Sage v. Bird City Dairy, LLC, 2013 WL 1444370, at *3 (D. Colo. April 8, 2013)(Jackson, J.).

28 U.S.C. § 1631 provides that when a "court finds that there is a want of jurisdiction, the court shall, if it is in the interests of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. See Raffle v. Executive Aircraft Maintenance, 2012 WL 592878, at *7 (D.N.M. Feb. 21, 2012)(Browning, J.)(transferring action under 28 U.S.C. § 1631 to the United States District Court for the District of Arizona because it would be more convenient and in the interests of justice). The Tenth Circuit has recognized that transfer is a discretionary option under 28 U.S.C. § 1631 "that should be considered to cure deficiencies related to personal jurisdiction." Shrader v. Biddinger, 633 F.3d at 1249. Before transferring a case, the transferor court must "satisfy itself that the proposed transferee court has personal jurisdiction over the parties," and determine whether such a transfer is in the interest of justice. See Grynberg v. Ivanhoe Energy, Inc., 490 F. App'x 86, 105 (10th Cir. 2012). Southampton Union is a New York School District, see Complaint ¶ 2, at 1, located in Southampton, New York, which is on Long Island, see Reciprocal Agreement at 4; Tr. at 17:6-8 (Court, Muehlenweg). The Eastern District of New York's jurisdiction comprises the entirety of Long Island, including Southampton. See UNITED STATES DISTRICT COURT: EASTERN DISTRICT OF NEW YORK, https://www.nyed.uscourts.gov/ (last visited June 10, 2016). It appears that the Eastern District of New York would have both specific and general personal jurisdiction over Southampton Union, and no party has indicated otherwise in the briefing or at the hearing on the MTD. See Walker v. THI of New Mexico at Hobbs Center, 801 F. Supp. 2d at 1138 n.7 (stating that, to prove specific jurisdiction, a plaintiff must show that his or her injuries arise out of or relate to the defendant's purposeful activities in the forum state, and that to prove general jurisdiction a

plaintiff must show that the defendant had continuous and systematic contracts with the forum state).

The Tenth Circuit has identified three factors to consider in the interest-of-justice analysis: (1) whether the claims would be time barred if filed anew in the proper forum; (2) whether the claims alleged are likely to have merit; and (3) whether the claims were filed in good faith or if it was clear at the time of filing that the court lacked the requisite jurisdiction. See Grynberg v. Ivanhoe Energy, Inc., 490 F. App'x at 105. First, the parties have not indicated whether if the case were dismissed, the claims would be time barred. Second, there is at least a colorable argument that Resource Associates' claims for breach of contract, see Complaint ¶¶ 11-14, at 3-4 (Count 1), and (ii) quantum meruit, see Complaint ¶¶ 15-18, at 4 (Count 2), are meritorious. Although the Court makes no determination whether Resource Associates' claims actually do have merit, the Court can say for purposes of deciding whether to transfer that the claims as set forth in the Complaint are "likely to have merit." Accordingly, this factor weighs in favor of transfer. Finally, the third factor is whether this case was filed in this forum in good faith or whether it was clear at the time of filing that the Court lacked the requisite jurisdiction. There is no evidence that this forum was chosen in anything but good faith, particularly given that Resource Associates is a Farmington-based company. In sum, the Court concludes that in the totality, the analysis favors transferring this case to the Eastern District of New York.

**IT IS ORDERED** that Defendant Southampton Union Free School District, a New York School District's Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer Venue, filed December 17, 2015 (Doc. 5), is granted. The Court will transfer this action to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1631.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Val R. Jolley
Val R. Jolley PC Law Firm
Farmington, New Mexico

--and--

Robert J. Muehlenweg
Elizabeth Heaphy
Rammelkamp Muehlenweg & Cordova P.A.
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Rodney L. Gabaldon
Walsh Gallegos Trevino Russo & Kyle, P.C.
Albuquerque, New Mexico

      *Attorneys for the Defendant*